## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| Kiowa Tribe, and Comanche Nation, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. CIV_22-425-G |
| The United States Department of the | ) | |
| Interior; Bryan Newland, in his official | ) | |
| capacity as Assistant Secretary – Indian | ) | |
| Affairs; Darryl LaCounte, in his official | ) | |
| capacity as Director of the Bureau of | ) | |
| Indian Affairs; Lori Gooday Ware, | ) | |
| Individually and in her official capacity | ) | |
| Chairwoman, Fort Sill Apache Tribe; | ) | |
| Pamela Eagleshield, individually and in | ) | |
| her official capacity as Vice-Chairman, | ) | |
| Fort Sill Apache Tribe; James Dempsey, | ) | |
| individually and in his official capacity | ) | |
| as Secretary-Treasurer, Fort Sill Apache | ) | |
| Tribe; Jeanette Mann, individually and | ) | |
| in her official capacity as Committee | ) | |
| Member, Fort Sill Apache Tribe; | ) | |
| Jennifer Heminokeky, individually and | ) | |
| In her official capacity as Committee | ) | |
| Member, Fort Sill Apache Tribe; | ) | |
| Dolly Loretta Buckner, individually | ) | |
| and in her official capacity as | ) | |
| Committee Member, Fort Sill Apache | ) | |
| Tribe; Philip Koszarek, individually | ) | |
| and in his official capacity as Chairman, | ) | |
| Fort Sill Apache Gaming Commission; | ) | |
| Naomi Hartford, individually and in her | ) | |
| official capacity as Vice- Chairman, | ) | |
| Fort Sill Apache Gaming Commission; | ) | |
| Michael Crump, individually and in his | ) | |
| official capacity as Commissioner, | ) | |
| Fort Sill Apache Gaming Commission; | ) | |
| Lauren Pinola, individually and in her | ) | |
| official capacity as Commissioner, | ) | |
| Fort Sill Apache Gaming Commission; | ) | |
| Debbie Baker, individually and in her | ) | |
| official capacity as Commissioner, | ) | |
| Fort Sill Apache Gaming  Commission; | ) | |
| Defendants. | ) | |

**SPECIAL APPEARANCE TO RESPOND TO MOTION FOR TEMPORARY RESTRAINING ORDER AND MOTION TO DISMISS FOR FAILURE TO JOIN A NECESSARY AND INDISPENSABLE PARTY**

COMES NOW, the Fort Sill Apache Tribe ("FSAT") Defendants, Lori Gooday Ware, Chairwoman, Pamela Eagleshield, Vice-Chairman, James Dempsey, Secretary-Treasurer, Jeanette Mann, Committee Member, Jennifer Heminokeky, Committee Member, Dolly Loretta Buckner, Committee Member, Philip Koszarek, Chairman FSAT Gaming Commission, Naomi Hartford, Vice-Chairman FSAT Gaming Commission, Michael Crump, Commissioner FSAT Gaming Commission, Lauren Pinola, Commissioner, FSAT Gaming Commission, and Debbie Baker, Commissioner, FSAT Gaming Commissioner, hereinafter referred to as FSAT Defendants to Oppose Plaintiff's Motion For Temporary Restraining Order and to hereby moves this Court to dismiss this case pursuant to Rules 19 and 12(b)(c) of the Federal Rules of Civil Procedure ("FRCP"). In support thereof, the FSAT Defendants would show the following:

**UNDISPUTED FACTS**

1. The FSAT is a federally recognized Indian Tribe.

2. Lori Gooday Ware is the Chairman of the FSAT.

3. Pamela Eagleshield is the Vice-Chairman of the FSAT.

4. James Dempsey is the Secretary-Treasurer of the FSAT.

5. Jeanette Mann is a Committee Member of the FSAT.

6. Dolly Loretta Buckner is a Committee Member of the FSAT

7. Jennifer Heminokeky is a Committee member of the FSAT.

8. Philip Koszarek is the Chairman of the FSAT Gaming Commission.

9. Naomi Hartford is the Vice-Chairman of the FSAT Gaming Commission.

10. Michael Crump is the Commissioner of the FSAT Gaming Commission.

11. Lauren Pinola is the Commissioner of the FSAT Gaming Commission.

12. Debbie Baker is the Commissioner of the FSAT Gaming Commission.

**HISTORICAL BACKGROUND OF FORT SILL APACHE TRIBE AND ITS**

**PROPERTY IN OKLAHOMA**

13.    The United States entered into a treaty with the Chiricahua Apache Tribe on July 1, 1852.   In that treaty, the United States agreed to "designate, settle and adjust the territorial boundaries of the Apache's lands."   This obligation was never carried out by the United States."   *Fort Sill Apache Tribe of Oklahoma et. al v. United States*, 19 Ind. Cl. Comm. 212, 239 (June 28, 1968)

14.    In 1886, the last group of Apaches lead by Geronimo surrendered to the United States Army as an Army in the Field and are taken as prisoners of war by the Federal Government.  *Scott v. United States*, 33 Ct. Cl. 486 (Ct. Cl. 1898).

15.    The Federal Government enacted a "final solution" to what it termed as the hostile Apache problem in 1886 by transporting the entire Apache Tribe, including men, woman, children, hostile, non-hostile and even those Apaches who served as scouts for the Army to Fort Pickens and Fort Marion in the State of Florida.   All the Apaches were designated as prisoners of war.   Once in Florida, the Government forcibly removed most of their children to the Carlisle Indian School in Pennsylvania.

16.    Due to an increasingly high mortality rate, Apache prisoners of war were moved to the Mount Vernon Barracks in Mobile, Alabama for further confinement as prisoners of war.

17.    In 1894 as the mortality rates continued to rise, efforts were made to move the Apache prisoners of war to a more temperate climate.   After objections from the Arizona and the New Mexico congressional delegations as to the repatriate of the Chiricahua Apache

prisoners of war back to their aboriginal territory, the Apache prisoners of war were transferred to the Fort Sill Military Reservation in the then existent Kiowa, Comanche, and Apache (KCA) Reservation in Oklahoma.

18.    The KCA Reservation was established under the Treaty of Medicine Lodge. By Executive Order on October 7, 1871, the Federal Government negotiated with the KCA Tribes to obtain 23,040 acres of land to establish the Fort Sill Military Reserve (Fort Sill). After the Government moved the Chiricahua Apache prisoners of war to Fort Sill, the Government negotiated with and received the approval of the leaders of the Kiowa and Comanche Nations for additional 26,987 acres of land for Fort Sill Military Reserve.  The land was "to be used only for military purposes and for the permanent settlement of thereon of the Apache prisoners of war." (Executive Order dated March 2, 1892).

19.    The Kiowa and Comanche Nations executed an agreement on February 17, 1897, ("Agreement") stating, in part, that they agreed that a portion of their reservation would be used "for the permanent settlement" of the Apache Prisoners of War and for military purposes. The Agreement reads in part:

> "We . . . do willingly agree, having had due notice and consideration, to the additions, by Executive Order, of the following described portions of our reservation to the Military Reservation of Fort Sill, Oklahoma, for the permanent settlement thereon of the Apache Prisoners of War who are now located on the original Fort Sill Military Reservation by Act of Congress."

20.    In 1897, President Cleveland, by the Executive Mansion dated February 26, 1897, set apart lands in the Kiowa Comanche and Kiowa Apache Reservation for the "exclusive use for military purposes and for the permanent location thereon of the Apache prisoners of war."

21.   The KCA Reservation was abolished by the Act of June 6, 1900, 31 Stat. 6721, thereby divesting the Kiowa, Comanche, and Apache Tribes of reservation title. See *The Fort Sill Apache Tribe of Oklahoma, et al. v. United States*, 41 Ind. Cl. Comm. 37, 55 (1977) ("[T]itle of the Kiowa, Comanche, and Kiowa Apache Indians to their reservation was taken by the United States on June 6, 1900, ..."). *See also Martinez v. State of Oklahoma*, Case No. PCD-2020-612, (Okla. Ct. Crim. App. 12/30/2021)

22.   The Act of August 24, 1912, 37 Stat. 518, 534, provided for the "relief and settlement of the Apache Indians now confined as prisoners of war at Fort Sill Military Reservation, Oklahoma, on lands to be selected for them by the Secretary of the Interior and the Secretary of War." This put the prisoners in two camps, the first are those who wish to go to the Mescalero Apache Reservation in New Mexico, and the second, those who elected to not join the Mescalero Apache Tribe and remain in Oklahoma.

23.   Since continued settlement on the Fort Sill Military Reserve was out of the question, the government decided, unilaterally, that those Apaches who choose to stay in Oklahoma would be relocated off the Fort Sill Military Reserve and placed on allotments in the former KCA Reservation.  It must be noted that neither the Kiowa Tribe, nor the Comanche Nation objected to the relocation of the Apaches off Fort Sill and on to the allotments within the KCA.

24.   With passage of the Indian Claims Act, the FSAT filed a successful claim before the Indian Claims Commission (ICC) for the loss of their lands in New Mexico and Arizona. *Fort Sill Apache Tribe v. United States*, 19 Ind. Cl. Comm. 212 (1968); See *United States v. Fort Sill Apache Tribe*, 533 F.2d 531 (Ct. Cl. 1976); and *United States v. Fort Sill Apache Tribe* 490 F.2d 819 (Ct. Cl. 1973)

25.    The FSAT also brought a successful claim before the ICC for the loss of its lands in the former KCA Reservation.  *Fort Sill Apache Tribe of Oklahoma, et al. v. United States*, 41 Ind. Cl. Comm. 72 (1977)   Congress in Public Law 106-67 recognized the FSAT's former reservation lands in Oklahoma.

26.    The claims litigation continued into the mid-1970's focusing on the monetary award for the loss lands in New Mexico, Arizona, and Oklahoma. After the awards were determined, the Federal Government persuaded the FSAT to formally organize by establishing a membership roll and approving a constitution. This process was completed in 1976 with approval of the FSAT's Constitution.

27.    In 1995 the FSAT purchased 0.53-acres of a former original Comanche allotment, which was at the time, owned by a member of the Kiowa Tribe in Lawton, Oklahoma.  The Tribe forwarded a fee-to trust application to the BIA to take that parcel of land into trust for gaming.

28.    The Department of the Interior (DOI) issued two legal opinions in 1996 and 1997 that found that the FSAT had obtained equal standing in the former KCA Reservation by agreement of the leaders of the Kiowa and Comanche Nations and by operation of law.  Based on those opinions, the Federal Government placed the 0.53-acre site in trust for gaming purposes.

29.    Starting in 2000, the Comanche Nation filed suit in the Court of Indian Offenses against the FSAT and its tribal leadership, claiming that the 0.53-acre site was part of an original Comanche Allotment and thus the Comanche Nation still maintained jurisdiction over the site even though it was held in trust status for the FSAT. All the Comanche Nation's claims were dismissed on sovereign and qualified immunity grounds in the Court of Indian Offenses

and their appeals to the Court of Indian Appeals denied. *Comanche Nation v. Darrow*, CIV-02-A04 (Court of Indian Offenses, January 16, 2004) and *Comanche Nation v. Houser*, CIV-04-A01P (Court of Indian Appeals 2004)[1]

30.     The Comanche Nation in 2005 filed a Complaint for Declaratory and Injunctive Relief in *Comanche Nation v. United States*, Case No. CIV-05-328-F (WD OK 2005).  The Comanche Nation having been unsuccessful in their four-year effort to sue the FSAT directly, brought this action to prevent DOI from approving the FSAT's Class III gaming Compact with the State of New Mexico.

31.     The Court in *Comanche Nation v. United States* issued a Preliminary Injunction staying DOI's approval of the FSAT's Class III Gaming Ordinance based the Comanche Nation's claims of irreputable harm.  The FSAT immediately appealed the District Court's ruling to the Tenth Circuit Court of Appeals.

32.     With the Court of Appeals action pending, the parties began negotiation on a proposed settlement.  The parties enter into an *Agreement of Compromise and Settlement Recitals* about March 8, 2007. In that agreement, the Comanche Nation agreed to dissolve the Preliminary Injunction and to dismiss the action and "not (try) exercise any civil or criminal jurisdiction… 0.53-acre parcel."  The FSAT agreed to withdraw all pending trust acquisitions of original Comanche allotment lands. The United States agreed to seek the Comanche

---

[1] Although these cases were dismissed on sovereign and qualified immunity defenses as should this matter; the Supreme Court has stated that Tribes have jurisdiction over their lands as a matter of tribal sovereignty. *South Dakota v. Yankton Sioux Tribe*, 522 U.S. 329 (1998) This **jurisdiction extends to all trust land**, whether or not that land holds a Reservation designation. *Oklahoma Tax Commission v. Citizen Band Potawatomi Tribe of Oklahoma*, 498 U.S. 505 (1991) (Emphasis added) Thus, based on its trust ownership, the FSAT has inherent jurisdiction over the 0.53-acre and Apache Wye parcels.

Nation's permission prior to approving the trust-to-trust acquisition of any original Comanche Nation allotment and withdrew the 1996 and 1997 Solicitor's opinions.

33.     The parcel at issue in this matter commonly referred to as the "Apache Wye", was taken into trust for the benefit and use of the FSAT in 2001, and it should be noted that the BIA did not require the consent of any other Tribe prior to the United States taking land into trust, pursuant to *Cherokee Nation v. Bernhardt*, Case No. 12-cv-493-GKF-JFJ (N.D. Okla. Mar. 24, 2020).

34.     The parcel at issue was never a Comanche Nation allotment or owned in any way individually by the Comanche Nation or Comanche Nation tribal members.  The parcel in question is not covered in any way by the terms of the *Agreement of Compromise and Settlement Recitals* or addressed in any way in the case. *Comanche Nation v. United States*, Case No. CIV-05-328-F (WD OK 2007) Thus it is a mystery as to what legal interest the Comanche Nation has in this case.

35.     As property is held in trust for the FSAT and as with all trust property sits under the sole jurisdiction on that Tribe as recognized by the Bureau of Indian Affairs, the National Indian Gaming Commission, the State of Oklahoma, and all local governments.  The Tribe even complied with the requirement of 25 C.F.R. Part 559 prior to starting construction of this facility.[2]

---

[2] 25 C.F.R. Part 559 requires the tribe to
    (a) A tribe shall submit to the Chair (of the NIGC a notice that a facility license is under consideration for issuance at least 120 days before opening any new place, facility, or location on Indian lands where class II or III gaming will occur.
    (b) The notice shall contain the following:
            (1) The name and address of the property;
            (2) A legal description of the property;
            (3) The tract number for the property as assigned by the Bureau of Indian Affairs, Land Title, and Records Offices, if any;

**ARUGMENT FAVORING DISMISSAL**

**RESPONSE TO DEFENDANT'S MOTION FOR TEMPORARY RESTRAINING**

**ORDER**

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24 (2008). A party may be granted a preliminary injunction only when monetary or other traditional legal remedies are inadequate, and "the right to relief [is] clear and unequivocal." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (quotations omitted). "The movant must make a 'clear and unequivocal" showing it is entitled to such relief*, Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1190 (10th Cir. 2008) (quoting *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004)). To obtain a preliminary injunction, the movant must show (1) it "is substantially likely to succeed on the merits," (2) it 'will suffer irreparable injury if the injunction is denied,' (3) its 'threatened injury outweighs the injury the opposing party will suffer under the injunction,' and (4) 'the injunction would not be adverse to the public interest.' *New Mexico Dep't of Game & Fish v. U.S. Dep't of the Interior*, 854 F.3d 1236, 1246 (10th Cir. 2017) (quoting *Fish v. Kobach*, 840 F.3d 710, 723 (10th Cir. 2016)". *State of Colorado v. EPA*, No. 20-1238 at 13 (10th Cir. 2021)

A movant "must demonstrate a significant risk that he or she will experience harm that cannot be compensated after the fact by money damages." *Fish*, 840 F.3d at 751. "[C]ourts have consistently noted that because a showing of probable irreparable harm is the single most important

---

(4) If not maintained by the Bureau of Indian Affairs, Department of the Interior, a copy of the trust or other deed(s) to the property or an explanation as to why such documentation does not exist; and

(5) If not maintained by the Bureau of Indian Affairs, Department of the Interior, documentation of the property's ownership.

prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements" will be considered. *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) Demonstrating irreparable harm is "not an easy burden to fulfill." *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003).

The primary assertion the Plaintiffs are making in the Motion for Temporary Restraining Order is economic impact.  The Tribe on the other hand is providing an Expanded Gaming Operations Planning Analysis prepared by Pro Forma Advisors LLC to evaluate updated gaming revenue potential for a 75-slot, convenience gaming operation envisioned for Apache Wye, Oklahoma - adjacent to the Tribe's existing Apache Market. (*Defendant's Exhibit 1*) The Tribe believes the data in this document will provide this Court with reasoned evidence based critical information regarding the market status as it sits today and growth, including historical trends.

Plaintiffs on the other hand want to employ a "crystal ball" to assert that the FSAT's Warm Springs Casino ("Casino") will be the straw that breaks the economic impact of gaming in Southwest Oklahoma's back, causing immediate and irreputable financial ruin to the Kiowa Tribe and Comanche Nation.  The courts have found that a movant must establish that irreparable harm is and that the showing of irreputable harm requires evidence of "a real and immediate threat of future injury by the defendant." *City of Los Angeles v. Lyons*, 461 U.S. 95, 107 n. 8 (1983).  The Plaintiffs have provided none in their moving papers.

It is reported that approximately 33 Tribes in Oklahoma operate a reported 143 casinos in Oklahoma.[3]  The Comanche Nation operates five casinos, the Kiowa Tribe operates five casinos,

---

[3] https://www.500nations.com/Oklahoma_Casinos.asp

and the Apache Tribe of Oklahoma operates two casinos all in the former KCA.[4]   Many of the tribal casinos all over Oklahoma and in the former KCA operate in close proximity of each other. (*See Defendant's Exhibit 1 pp 8-10*)   In Lawton, Oklahoma alone, the FSAT and the Comanche Nation operate sizable gaming facilities that have continued to grow over the last twenty years despite their competition and close proximity of a mile or less.   All Tribes in Oklahoma rely heavily on the revenues from casinos and the Kiowa Tribe and Comanche Nation have presented no evidence of any Tribe or even their own Tribes suffering dire and immediate economic consequences as a result of another Tribe opening a new casino near one of their operations.   Thus, the Comanche Nation and Kiowa Tribe's claims, based on a few lines from declaration of tribal officials who have shown no real proof of their involvement in the drafting of tribal budgets or in the allocation of tribal funds, of imminent, immediate, and irreputable economic harm to their Tribes and members form a facility that will at best operate 50 to 75 gaming machines in an isolated location in Southwest, Oklahoma meets no standard outlined by this or any other courts as it relates to proving an irreputable injury.   Defendant's Exhibit 1 on page ten states that there are 73,440 gaming machines in Oklahoma, yet the Comanches Nation and Kiowas Tribe want this Court to believe that 50 to 75 more will mean absolute economic ruin for their Tribe despite the fact that they employ thousands of machines already.[5]

The Plaintiffs have not provided any evidence of danger other than mere speculation. Their false and unsubstantiated assumptions on their loss revenues are completely unproven.   Plaintiffs, by their own admissions operate nine, soon to be eleven, casinos among them within the same jurisdictional area. See Declaration of Mia Tahdooahnippah ¶4 and Declaration of Lindy Waters

---

[4] https://www.nigc.gov/images/uploads/GamingTribesABC.pdf

[5] Defendant's Exhibit 1, page 15.

¶5. Clearly an added casino is not the issue, it is that it is the FSAT is attempting to open a casino. Competition is not sufficient to claim irreparable injury.

The second prong concerns whether a threatened injury outweighs any purported damage of an injunction. As discussed in prong one, the Plaintiffs have provided this court with no evidence that allowing the FSAT to continue with its plan of opening up its Casino will in any way impact their revenues especially in might that the all the Tribe continue to open. If there were, in fact, injury then the Plaintiffs would not be opening up more of their own casinos. However, preventing the FSAT from opening its Casino would severely damage the FSAT. The FSAT has spent time, money, and resources in preparing for this operation. The purpose of the Casino is to provide economic development for the FSAT so that it too, like its counterparts, may provide essential services for its members. The FSAT is at a disadvantage than its counterparts because it owns less property, and only has one casino that generates revenue, while Plaintiffs generate enough revenue that they can each justify the opening of an additional casino.

Granting the injunction would be averse to public interest because it would be hindering the FSAT which has followed all the rules and requirements in getting the parcel placed into trust and followed the NIGC's Part 559 regulations in using its land for a legitimate economic purpose as envisioned in the Indian Gaming Regulatory Act (IGRA).[6]  In addition, Congress in passing the IGRA set out the NIGC as the agency task to regulate gaming pursuant to the IGRA.[7]  To allow

---

[6] 25 U.S.C. § 2701 (5) Indian tribes have the exclusive right to regulate gaming activity on Indian lands if the gaming activity is not specifically prohibited by Federal law and is conducted within a State which does not, as a matter of criminal law and public policy, prohibit such gaming activity.

[7] 25 U.S. Code § 2702 – the purpose of this act is to – (3) to declare that the establishment of independent Federal regulatory authority for gaming on Indian lands, the establishment of Federal standards for gaming on Indian lands, and the establishment of a National Indian Gaming Commission are necessary to meet congressional concerns regarding gaming and to protect such gaming as a means of generating tribal revenue.

the Kiowa Tribe or the Comanche Nation to try to assume that role would be contrary to Congress' intent and declarations when passing IGRA and present a circumstance that would be wholly contrary to public policy by having Tribes trying to regulate each other in violations of federal laws and sovereignty.

Plaintiffs heap hopeless arguments claiming they would succeed on the merits. Plaintiffs are wrong. As stated above, the property in question is held in trust by the United States for the benefit and use of the FSAT. This land is "Indian Lands" as that term is used in IGRA.[8]   Under IGRA § 2710(b)(1), "[a]n Indian tribe may engage in or license and regulate, Class II gaming on Indian lands within such Tribe's jurisdiction."  IGRA § 2710(d)(1) provides that "Class III gaming activities shall be lawful on Indian lands" only if such activities are conducted by an ordinance or resolution adopted by the governing body of the tribe having jurisdiction over such lands and approved by the NIGC; and conducted in conformity with a Tribal/State Compact."  The Tribe has a Gaming Ordinance and Compact. Thus, the Tribe can game on this property.

The Plaintiffs attempt to claim that the land was taken into trust "illegally" because consent was not given by the Plaintiff is erroneous and contrary to numerous Supreme Court rulings. *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 140 (1982);   *Oklahoma Tax Commission v. Citizen Band Potawatomi Tribe of Oklahoma*, 498 U.S. 505 (1991); and *South Dakota v. Yankton Sioux Tribe*, 522 U.S. 329 (1998)   Yet, if this really were the case, then the Plaintiffs should not attempt to circumvent the Administrative Procedures Act, Pub. L. 79–404, 60 Stat., and certainly should not unjustly try to cloak this as an emergency since the land has been in trust since 2001 and the FSAT has already been operating a convenience store and gas station on this property since

---

[8] Indian lands are defined in IGRA § 2704 (3) as: "all lands within the limits of any Indian reservation; and any lands title to which is either held in trust by the United States for the benefit of any Indian tribe or individual or held by any Indian tribe or individual subject to restriction by the United States against alienation and over which an Indian tribe exercises governmental power."

May 18, 2018.  Yet, the Kiowa Tribe and Comanche Nation said nothing and only waited until the

Fort Sill Apache spent hundreds of thousands on the casino and now want to prevent the opening

of the facility.  Thus, if this really were really an emergency wherein Plaintiffs felt a Temporary

Restraining Oder was needed, then why would they wait until the eleventh hour to seek such relief.

By Plaintiffs' own admission, "in February 2022, the FSAT Tribe announced on social media that

it was constructing a casino, called the Warm Springs Casino." Plaintiffs Complaint, Paragraph

43.

1.   **THE FORT SILL APACHE TRIBE IS IMMUNE FROM SUIT AND IS A
     NECESSARY AND INDISPENSABLE PARTY.**

   a.   **The Fort Sill Apache Tribe has not Waived Sovereign Immunity.**

It is an undisputed fact that FSAT is a federally recognized Indian Tribe. As a federally

recognized Indian tribe with inherent sovereignty, the FSAT is immune from suit. Tribal sovereign

immunity is a well-established principle, see *U.S. v. U.S. Fidelity Guar. Co.,* 309 U.S. 506, 512

(1940); *Michigan v. Bay Mills Indian Cmty.,* 572 U.S. at 788; *Williams v. Poarch Band of Creek
Indians,* 839 F.3d 1312, 1325 (11th Cir. 2016). "As a matter of federal law, a tribe is subject to

suit only where Congress has authorized the suit, or the tribe has waived its immunity." *Kiowa

Tribe of Okla. v. Manufacturing Technologies,* 523 U.S. 751, (1998). If Congress abrogates a

tribe's sovereign immunity, it must make it "unmistakably clear" *Florida v. Seminole Tribe of

Florida,* 181 F.3d 1237, 1242 (11th Cir. 1999). Likewise, any waiver of sovereign immunity by

the tribe must be "unequivocally expressed." *United States v. Testan*, 424 U. S. 392, 399 (1976).

This sovereign immunity extends to those acting in their official capacities. A defendant in an

official capacity action—where the relief sought is only nominally against the official and in fact

is against the official's office and thus the sovereign itself—may assert sovereign immunity. *Kentucky v. Graham,* 473 U. S. 159, 167 (1985); and *Nahno-Lopez v. Houser*, 625 F.3d 1279 (10th Cir. 2010)

Plaintiffs assert in their Complaint they are seeking declaratory and injunctive relieve against the FSAT Defendants in their official capacities. However, Congress has not abrogated the FSAT immunity from suit in this action, nor has the FSAT waived its immunity. The Plaintiffs also claim they are seeking claims against the FSAT Defendants in their individual capacities; however, this is a guise. In the context of lawsuits against individuals, courts look to whether the sovereign is the real party in interest to determine whether sovereign immunity bars the suit, see *Hafer v. Melo*, 502 U. S. 21, 25. It is clear from the issues raised in Plaintiff's Complaint that these actions are only actions that may be taken in the official capacity. See Paragraphs 80-85 wherein the Plaintiff's again assert the individual's capacities within FSAT. The Plaintiffs might attempt to circumvent the sovereign immunity argument by citing their meritless claims of racketeering 18 U.S.C. §1962(c), and illegal gaming 18 U.S.C. §1166, both of which are found in the United States *Criminal* Code. Those potential arguments might hold water if, in fact, the individuals were being prosecuted for any crimes. Which, to be clear, the Plaintiffs would have no jurisdiction to prosecute for a slew of reasons, which are not discussed here because this is a civil proceeding.

### b. The Fort Sill Apache Tribe has an Interest in this Action and is Necessary Party Under FRCP 19(a).

Federal Rule of Civil Procedure 19(a) deems a party necessary if:

(1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's

absence may (i) as a practical matter impair or impede the person's ability
to protect that interest or (ii) leave any of the persons already parties subject
to a substantial risk of incurring double, multiple or otherwise inconsistent
obligations by reason of the claimed interest.

This standard is like the "impair or impede" standard for mandatory intervention under
Rule 24(a)(2) and is clearly met by the FSAT here.

The FSAT has an "interest in the outcome of the present litigation that will be prejudiced if
[the] case proceeds in its absence." *Brown v. United States*, 42 Fed. Cl. 538, 565 (1998). "Under
[Rule 19], the finding that a party is necessary to the action is predicated only on that party having
a claim to an interest." *United Keetoowah Band v. RCFC* 19, No. 03-1433L (Fed. Cl. Sep. 16,
2005) quoting *Shermoen v. United States,* 982 F.2d 1312, 1317 (9th Cir. 1992). The FSAT is the
beneficial title holder of the property at issue in the present case. "It is generally recognized that a
party claiming title to property that is the subject of litigation has an 'interest' in that litigation."
*Id.*

The FSAT is the only beneficial title holder to this property since it was taken into trust by the
United States for the FSAT in 2001. Since its acquisition, the FSAT has utilized the property for
its various needs, just like any other tribe, or property owner would do. Any action dictating how
the FSAT is allowed to use its property clearly triggers the FSAT's use and enjoyment of the
property and the economic welfare of the FSAT Tribe. Further, even if the Defendants were to
dismiss the FSAT Defendants from this case, the FSAT would still be considered a necessary and
indispensable party.  The characterization of a claim or the fact that it has been brought only against
federal defendants does not control a determination of whether the claim would affect the rights
of an absent Tribe. See *Quileute Indian Tribe v. Babbitt,* 18 F.3d 1456, 1460-61 (9th Cir. 1994).

### c.   The Fort Sill Apache Tribe is an Indispensable Party Under FRCP 19(b).

The FSAT is necessary and is an indispensable party under FRCP 19(b). In determining whether a party is indispensable this Court is required to look at several factors, including potential prejudice, the extent of that prejudice, if the judgement rendered without the party would be adequate, and if the Plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

The first factor of Rule 19(b) is concerned with whether the nonparty would 'be adversely affected in a practical sense, and if so, would the prejudice be immediate and serious, or remote and minor.'" *United States ex rel. Steele v. Turnkey Gaming, Inc.,* 135 F.3d 1249, 1251 (8th Cir. 1998). Plaintiff's claims at their core concern jurisdictional ownership over the property in question, these claims present an immediate and serious danger for the loss of the ability of FSAT to exercise its sovereignty over this land. Further, although the United States is also a Defendant in this action, the United States is not able to represent the interest of the FSAT. Now, the FSAT can only speculate as to the position of the United States in this matter. If "there is a conflict between the interests of the United States and the interests of Indians, representation of the Indians by the United States is not adequate." *Manygoats v. Kleppe,* 558 F.2d 556, 558 (10th Cir. 1977).

The second factor looks to the "prejudice could be lessened or avoided." Here, there is no way to shape the relief as to lessen or avoid the prejudice to the FSAT. Any ruling would affect and abrogate the jurisdiction of the FSAT over this property. Before Plaintiffs attempt to argue that this could be avoided if FSAT would join the suit, "[i]t is wholly at odds with the policy of tribal immunity to put the tribe to this … choice between waiving its immunity or waiving its right not to have a case proceed without it." Wichita and Affiliated Tribes of Oklahoma v. Hodel, 788 F.2d 765, 776 (D.C. Cir. 1986).

For the same reasons, no judgement will be adequate without the FSAT, as the FSAT would be bound by any determination of this Court regarding the jurisdiction of the property. "The purpose of this factor is "not intended to address the adequacy of the judgment from the plaintiff's point of view," rather, it is intended to protect the interest of "the courts and the public in complete, consistent, and efficient settlement of controversies." *Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001). In the disposition of any claim of jurisdiction over the FSAT, the FSAT should be able to present an argument advocating for its best interest.

Finally, the Plaintiffs would argue that dismissal would leave them without a remedy. However, for reasons stated below, this matter should be dismissed regardless of whether or not the FSAT is a party for the reasons set forth below. Since the FSAT cannot be joined, and it is a necessary and indispensable party, this case should be dismissed.

## 2. The Plaintiffs Have Failed to State a Claim for Which Relief Can be Granted Pursuant to FRCP 12(b)(6).

A complaint must assert a plausible claim and set forth sufficient factual allegations to support the claim. *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). "A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. Further, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*

Here, The Plaintiffs assert that the FSAT is violating the Indian Gaming Regulatory Act ("IGRA"), and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), both claims are unfounded as these are legal conclusions couched as factual allegations. The Plaintiffs are correct that an Indian tribe may engage in gaming on the Indian lands within such tribe's jurisdiction. The FSAT parcel, is, and has been since 2001, been in trust for the benefit and use of

the FSAT, extinguishing any lingering jurisdiction the Plaintiffs might have. As trust property, it is a reservation of the FSAT. *Cheyenne Arapaho Tribes v. State of Oklahoma,* 618 F.2d 665, 668 (10th Cir. 1980) – holding "lands held in trust by the United States for the Tribes are Indian Country within the meaning of § 1151(a)." Therefore, this property is clearly within the FSAT jurisdiction and as such may conduct gaming on the property. It should also be noted the Kiowa Comanche Apache reservation has been disestablished so any claims that the reservation is intact are inaccurate. *Martinez v. State,* 2021 OK CR 40 (2021). As to the RICO claims, those arguments fail because the FSAT Defendants are not engaging in illegal gambling because any gaming that might be conducted is within the requirements of IGRA.

The Comanche Nation has provided statements from its Tribal Administrator and the CEO of its gaming operations, and Kiowa has provided statements from its Executive Assistant to the Executive Branch and Executive Director claiming that any opening of a casino would be competition to the Plaintiffs. That alone is insufficient to bring a claim, let alone obtain an injunction against the FSAT. The Comanche Nation attempts to cite violations of the 2007, *Agreement of Compromise and Settlement Recitals*, Exhibit 2 in Plaintiff's Complaint, clearly states the FSAT will "withdraw and abandon any and all" applications for transfers on any "original Comanche Allotment." *Id.* Paragraph 3. Likewise, the United States agreed to obtain consent from the Comanche Nation for any transfers "located within an original Comanche Allotment." *Id.* Paragraph 4. By Plaintiffs own admissions in the Complaint, the property at issue here was an original Kiowa allotment. As such, the Agreement is inapplicable.

## CONCLUSION

The FSAT is immune from suit and is a necessary and indispensable party to this action and Plaintiffs have failed to produce factual allegations that support their claim. Therefore, this

case should be dismissed. The Plaintiffs have also failed to meet the requirements for issuing a temporary restraining order and therefore Plaintiffs' Motion for Temporary Restraining Order should be denied.

Respectfully submitted,

S/ Victoria Holland
Victoria Holland
(OBA 33197 WDOK 17-151)
vholland@devollaw.com
Devol and Associates
15205 Traditions Lake Parkway
Edmond, OK 73003
Telephone (405)225-2300
Facsimile (405)225-2301

S/ Phillip Thompson
Phillip E. Thompson
(to be admitted pro hac vice)
Phillipthomme.com
P.O. Box 467
Point of Rocks, MD 21777
Telephone (301)535-0488
Facsimile (202)905-0057

S/ Valerie Devol
Valerie Devol
vdevol@devollaw.com
Devol and Associates
15205 Traditions Lake Parkway
Edmond, OK 73003
Telephone (405)225-2300
Facsimile (405)225-2301

S/ A. Daniel Woska
A.  Daniel Woska
dwoska@devollaw.com
Devol and Associates
15205 Traditions Lake Parkway
Edmond, OK 73003
Telephone (405)225-2300
Facsimile (405)225-2301

*Attorneys for Fort Sill Apache Defendants*

CERTIFICATE OF DELIVERY

I hereby certify that on this 27 day of May 2022, a true and correct copy of the foregoing was delivered to the following:

Forrest Tahdooahnippah
Amy Weisgram
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
forrest@dorsey.com
weisgram.amy@dorsey.com

Ryland Rivas
Rivas Law
628 W. Choctaw Ave
Chickasaw, OK 73018
ryalnd@rivaslaw.com

S/Victoria Holland