## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| Kiowa Tribe, and Comanche Nation, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| The United States Department of the Interior; Bryan Newland, in his official capacity as Assistant Secretary – Indian Affairs; Darryl LaCounte, in his official capacity as Director of the Bureau of Indian Affairs; Lori Gooday Ware, Individually and in her official capacity Chairwoman, Fort Sill Apache Tribe; Pamela Eagleshield, individually and in her official capacity as Vice-Chairman, Fort Sill Apache Tribe; James Dempsey, individually and in his official capacity as Secretary-Treasurer, Fort Sill Apache Tribe; Jeanette Mann, individually and in her official capacity as Committee Member, Fort Sill Apache Tribe; Jennifer Heminokeky, individually and In her official capacity as Committee Member, Fort Sill Apache Tribe; Dolly Loretta Buckner, individually and in her official capacity as Committee Member, Fort Sill Apache Tribe; Philip Koszarek, individually and in his official capacity as Chairman, Fort Sill Apache Gaming Commission; Naomi Hartford, individually and in her official capacity as Vice- Chairman, Fort Sill Apache Gaming Commission; Michael Crump, individually and in his official capacity as Commissioner, Fort Sill Apache Gaming Commission; Lauren Pinola, individually and in her official capacity as Commissioner, Fort Sill Apache Gaming Commission; Debbie Baker, individually and in her official capacity as Commissioner, Fort Sill Apache Gaming  Commission; | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )   Case No. CIV_22-425-G |
| Defendants. | ) |

1

# AMENDED SPECIAL APPEARANCE TO RESPOND TO MOTION FOR TEMPORARY RESTRAINING ORDER

COMES NOW, the Fort Sill Apache Tribe ("FSAT") Defendants, Lori Gooday Ware, Chairwoman, Pamela Eagleshield, Vice-Chairman, James Dempsey, Secretary-Treasurer, Jeanette Mann, Committee Member, Jennifer Heminokeky, Committee Member, Dolly Loretta Buckner, Committee Member, Philip Koszarek, Chairman FSAT Gaming Commission, Naomi Hartford, Vice-Chairman FSAT Gaming Commission, Michael Crump, Commissioner FSAT Gaming Commission, Lauren Pinola, Commissioner, FSAT Gaming Commission, and Debbie Baker, Commissioner, FSAT Gaming Commissioner, hereinafter referred to as FSAT Defendants to Oppose Plaintiff's Motion For Temporary Restraining Order and to hereby moves this Court to dismiss this case pursuant to Rules 19 and 12(b)(c) of the Federal Rules of Civil Procedure ("FRCP"). In support thereof, the FSAT Defendants would show the following:

## UNDISPUTED FACTS

1. The FSAT is a federally recognized Indian Tribe.

2. Lori Gooday Ware is the Chairman of the FSAT.

3. Pamela Eagleshield is the Vice-Chairman of the FSAT.

4. James Dempsey is the Secretary-Treasurer of the FSAT.

5. Jeanette Mann is a Committee Member of the FSAT.

6. Dolly Loretta Buckner is a Committee Member of the FSAT

7. Jennifer Heminokeky is a Committee member of the FSAT.

8. Philip Koszarek is the Chairman of the FSAT Gaming Commission.

9. Naomi Hartford is the Vice-Chairman of the FSAT Gaming Commission.

10. Michael Crump is the Commissioner of the FSAT Gaming Commission.

11. Lauren Pinola is the Commissioner of the FSAT Gaming Commission.

12. Debbie Baker is the Commissioner of the FSAT Gaming Commission.

## HISTORICAL BACKGROUND OF FORT SILL APACHE TRIBE AND ITS PROPERTY IN OKLAHOMA

13. The United States entered into a treaty with the Chiricahua Apache Tribe on July 1, 1852. In that treaty, the United States agreed to "designate, settle and adjust the territorial boundaries of the Apache's lands." This obligation was never carried out by the United States." *Fort Sill Apache Tribe of Oklahoma et. al v. United States*, 19 Ind. Cl. Comm. 212, 239 (June 28, 1968)

14. In 1886, the last group of Apaches lead by Geronimo surrendered to the United States Army as an Army in the Field and are taken as prisoners of war by the Federal Government. *Scott v. United States*, 33 Ct. Cl. 486 (Ct. Cl. 1898).

15. The Federal Government enacted a "final solution" to what it termed as the hostile Apache problem in 1886 by transporting the entire Apache Tribe, including men, woman, children, hostile, non-hostile and even those Apaches who served as scouts for the Army to Fort Pickens and Fort Marion in the State of Florida. All the Apaches were designated as prisoners of war. Once in Florida, the Government forcibly removed most of their children to the Carlisle Indian School in Pennsylvania.

16. Due to an increasingly high mortality rate, Apache prisoners of war were moved to the Mount Vernon Barracks in Mobile, Alabama for further confinement as prisoners of war.

17. In 1894 as the mortality rates continued to rise, efforts were made to move the Apache prisoners of war to a more temperate climate. After objections from the Arizona and the New Mexico congressional delegations as to the repatriate of the Chiricahua Apache

prisoners of war back to their aboriginal territory, the Apache prisoners of war were transferred to the Fort Sill Military Reservation in the then existent Kiowa, Comanche, and Apache (KCA) Reservation in Oklahoma.

18. The KCA Reservation was established under the Treaty of Medicine Lodge. By Executive Order on October 7, 1871, the Federal Government negotiated with the KCA Tribes to obtain 23,040 acres of land to establish the Fort Sill Military Reserve (Fort Sill). After the Government moved the Chiricahua Apache prisoners of war to Fort Sill, the Government negotiated with and received the approval of the leaders of the Kiowa and Comanche Nations for additional 26,987 acres of land for Fort Sill Military Reserve. The land was "to be used only for military purposes and for the permanent settlement of thereon of the Apache prisoners of war." (Executive Order dated March 2, 1892).

19. The Kiowa and Comanche Nations executed an agreement on February 17, 1897, ("Agreement") stating, in part, that they agreed that a portion of their reservation would be used "for the permanent settlement" of the Apache Prisoners of War and for military purposes. The Agreement reads in part:

> "We . . . do willingly agree, having had due notice and consideration, to the additions, by Executive Order, of the following described portions of our reservation to the Military Reservation of Fort Sill, Oklahoma, for the permanent settlement thereon of the Apache Prisoners of War who are now located on the original Fort Sill Military Reservation by Act of Congress."

20. In 1897, President Cleveland, by the Executive Mansion dated February 26, 1897, set apart lands in the Kiowa Comanche and Kiowa Apache Reservation for the "exclusive use for military purposes and for the permanent location thereon of the Apache prisoners of war."

21. The KCA Reservation was abolished by the Act of June 6, 1900, 31 Stat. 6721, thereby divesting the Kiowa, Comanche, and Apache Tribes of reservation title. See *The Fort Sill Apache Tribe of Oklahoma, et al. v. United States*, 41 Ind. Cl. Comm. 37, 55 (1977) ("[T]itle of the Kiowa, Comanche, and Kiowa Apache Indians to their reservation was taken by the United States on June 6, 1900, ..."). *See also Martinez v. State of Oklahoma*, Case No. PCD-2020-612, (Okla. Ct. Crim. App. 12/30/2021)

22. The Act of August 24, 1912, 37 Stat. 518, 534, provided for the "relief and settlement of the Apache Indians now confined as prisoners of war at Fort Sill Military Reservation, Oklahoma, on lands to be selected for them by the Secretary of the Interior and the Secretary of War." This put the prisoners in two camps, the first are those who wish to go to the Mescalero Apache Reservation in New Mexico, and the second, those who elected to not join the Mescalero Apache Tribe and remain in Oklahoma.

23. Since continued settlement on the Fort Sill Military Reserve was out of the question, the government decided, unilaterally, that those Apaches who choose to stay in Oklahoma would be relocated off the Fort Sill Military Reserve and placed on allotments in the former KCA Reservation. It must be noted that neither the Kiowa Tribe, nor the Comanche Nation objected to the relocation of the Apaches off Fort Sill and on to the allotments within the KCA.

24. With passage of the Indian Claims Act, the FSAT filed a successful claim before the Indian Claims Commission (ICC) for the loss of their lands in New Mexico and Arizona. *Fort Sill Apache Tribe v. United States*, 19 Ind. Cl. Comm. 212 (1968); See *United States v. Fort Sill Apache Tribe*, 533 F.2d 531 (Ct. Cl. 1976); and *United States v. Fort Sill Apache Tribe* 490 F.2d 819 (Ct. Cl. 1973)

25. The FSAT also brought a successful claim before the ICC for the loss of its lands in the former KCA Reservation. *Fort Sill Apache Tribe of Oklahoma, et al. v. United States*, 41 Ind. Cl. Comm. 72 (1977)  Congress in Public Law 106-67 recognized the FSAT's former reservation lands in Oklahoma.

26. The claims litigation continued into the mid-1970's focusing on the monetary award for the loss lands in New Mexico, Arizona, and Oklahoma. After the awards were determined, the Federal Government persuaded the FSAT to formally organize by establishing a membership roll and approving a constitution. This process was completed in 1976 with approval of the FSAT's Constitution.

27. In 1995 the FSAT purchased 0.53-acres of a former original Comanche allotment, which was at the time, owned by a member of the Kiowa Tribe in Lawton, Oklahoma.  The Tribe forwarded a fee-to trust application to the BIA to take that parcel of land into trust for gaming.

28. The Department of the Interior (DOI) issued two legal opinions in 1996 and 1997 that found that the FSAT had obtained equal standing in the former KCA Reservation by agreement of the leaders of the Kiowa and Comanche Nations and by operation of law.  Based on those opinions, the Federal Government placed the 0.53-acre site in trust for gaming purposes.

29. Starting in 2000, the Comanche Nation filed suit in the Court of Indian Offenses against the FSAT and its tribal leadership, claiming that the 0.53-acre site was part of an original Comanche Allotment and thus the Comanche Nation still maintained jurisdiction over the site even though it was held in trust status for the FSAT. All the Comanche Nation's claims were dismissed on sovereign and qualified immunity grounds in the Court of Indian Offenses

and their appeals to the Court of Indian Appeals denied. *Comanche Nation v. Darrow*, CIV-02-A04 (Court of Indian Offenses, January 16, 2004) and *Comanche Nation v. Houser*, CIV-04-A01P (Court of Indian Appeals 2004)[1]

30. The Comanche Nation in 2005 filed a Complaint for Declaratory and Injunctive Relief in *Comanche Nation v. United States*, Case No. CIV-05-328-F (WD OK 2005). The Comanche Nation having been unsuccessful in their four-year effort to sue the FSAT directly, brought this action to prevent DOI from approving the FSAT's Class III gaming Compact with the State of New Mexico.

31. The Court in *Comanche Nation v. United States* issued a Preliminary Injunction staying DOI's approval of the FSAT's Class III Gaming Ordinance based the Comanche Nation's claims of irreputable harm. The FSAT immediately appealed the District Court's ruling to the Tenth Circuit Court of Appeals.

32. The parties settled the matter by entering into an *Agreement of Compromise and Settlement Recitals* about March 8, 2007. In that agreement, the Comanche Nation agreed to dissolve the Preliminary Injunction and to dismiss the action and "not (try) exercise any civil or criminal jurisdiction… 0.53-acre parcel." The FSAT agreed to withdraw all pending trust acquisitions of original Comanche allotment lands. The United States agreed to seek the Comanche Nation's permission prior to approving the trust-to-trust acquisition of any original Comanche Nation allotment and withdrew the 1996 and 1997 Solicitor's opinions.

---

[1] Although these cases were dismissed on sovereign and qualified immunity defenses as should this matter; the Supreme Court has stated that Tribes have jurisdiction over their lands as a matter of tribal sovereignty. *South Dakota v. Yankton Sioux Tribe*, 522 U.S. 329 (1998) This **jurisdiction extends to all trust land**, whether or not that land holds a Reservation designation. *Oklahoma Tax Commission v. Citizen Band Potawatomi Tribe of Oklahoma*, 498 U.S. 505 (1991) (Emphasis added) Thus, based on its trust ownership, the FSAT has inherent jurisdiction over the 0.53-acre and Apache Wye parcels.

33. The parcel at issue in this matter commonly referred to as the "Apache Wye", was taken into trust for the benefit and use of the FSAT in 2001. The Tribe has been operating a convenience store and gas station on this parcel since May 2018.

34. The parcel at issue was never a Comanche Nation allotment or owned in any way individually by the Comanche Nation or Comanche Nation tribal members. The parcel in question is not covered in any way by the terms of the *Agreement of Compromise and Settlement Recitals* or addressed in any way in the case. *Comanche Nation v. United States*, Case No. CIV-05-328-F (WD OK 2007)

35. The property is held in trust for the FSAT and as with all trust property sits under the sole jurisdiction on that Tribe as recognized by the Bureau of Indian Affairs, the National Indian Gaming Commission, the State of Oklahoma, and all local governments.[2]

<b>ARUGMENT FAVORING DISMISSAL</b>

<b>RESPONSE TO DEFENDANT'S MOTION FOR TEMPORARY RESTRAINING ORDER</b>

**1. Plaintiff's Claims Do Not Meet The Standard For Preliminary Relief**

---

[2] The Tribe complied with 25 C.F.R. Part 559 which requires the tribe to
  (a) A tribe shall submit to the Chair (of the NIGC a notice that a facility license is under consideration for issuance at least 120 days before opening any new place, facility, or location on Indian lands where class II or III gaming will occur.
    (b) The notice shall contain the following:
        (1) The name and address of the property;
        (2) A legal description of the property;
        (3) The tract number for the property as assigned by the Bureau of Indian Affairs, Land Title, and Records Offices, if any;
        (4) If not maintained by the Bureau of Indian Affairs, Department of the Interior, a copy of the trust or other deed(s) to the property or an explanation as to why such documentation does not exist; and
        (5) If not maintained by the Bureau of Indian Affairs, Department of the Interior, documentation of the property's ownership.

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24 (2008). A party may be granted a preliminary injunction only when monetary or other traditional legal remedies are inadequate, and "the right to relief [is] clear and unequivocal." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (quotations omitted). "The movant must make a 'clear and unequivocal" showing it is entitled to such relief*, Port City Props. v. Union Pac. R.R. Co*., 518 F.3d 1186, 1190 (10th Cir. 2008) (quoting *Dominion Video Satellite, Inc. v. Echostar Satellite Corp*., 356 F.3d 1256, 1260 (10th Cir. 2004)). To obtain a preliminary injunction, the movant must show (1) it "is substantially likely to succeed on the merits," (2) it 'will suffer irreparable injury if the injunction is denied,' (3) its 'threatened injury outweighs the injury the opposing party will suffer under the injunction,' and (4) 'the injunction would not be adverse to the public interest.' *New Mexico Dep't of Game & Fish v. U.S. Dep't of the Interior*, 854 F.3d 1236, 1246 (10th Cir. 2017) (quoting *Fish v. Kobach*, 840 F.3d 710, 723 (10th Cir. 2016)". *State of Colorado v. EPA*, No. 20-1238 at 13 (10th Cir. 2021)

A movant "must demonstrate a significant risk that he or she will experience harm that cannot be compensated after the fact by money damages." *Fish*, 840 F.3d at 751. "[C]ourts have consistently noted that because a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements" will be considered. *Dominion Video Satellite, Inc. v. Echostar Satellite Corp*., 356 F.3d 1256, 1260 (10th Cir. 2004) Demonstrating irreparable harm is "not an easy burden to fulfill." *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003).

The primary assertion the Plaintiffs are making in the Motion for Temporary Restraining Order is economic impact. The Tribe on the other hand is providing an Expanded Gaming

Operations Planning Analysis prepared by Pro Forma Advisors LLC to evaluate updated gaming revenue potential for a 75-slot, convenience gaming operation envisioned for Apache Wye, Oklahoma - adjacent to the Tribe's existing Apache Market. (*Defendant's Exhibit 1*) The Tribe believes the data in this document will provide this Court with reasoned evidence based critical information regarding the market status as it sits today and growth, including historical trends.

Plaintiffs on the other hand want to employ a "crystal ball" to assert that the FSAT's Warm Springs Casino ("Casino") will be the straw that breaks the economic impact of gaming in Southwest Oklahoma's back, causing immediate and irreputable financial ruin to the Kiowa Tribe and Comanche Nation. The courts have found that a movant must establish that irreparable harm is and that the showing of irreputable harm requires evidence of "a real and immediate threat of future injury by the defendant." *City of Los Angeles v. Lyons*, 461 U.S. 95, 107 n. 8 (1983). The Plaintiffs have provided none in their moving papers.

It is reported that approximately 33 Tribes in Oklahoma operate a reported 143 casinos in Oklahoma.[3] The Comanche Nation operates five casinos, the Kiowa Tribe operates five casinos, and the Apache Tribe of Oklahoma operates two casinos all in the former KCA.[4] Many of the tribal casinos all over Oklahoma and in the former KCA operate in close proximity of each other. (*See Defendant's Exhibit 1 pp 8-10*) In Lawton, Oklahoma alone, the FSAT and the Comanche Nation operate sizable gaming facilities that have continued to grow over the last twenty years despite their competition and close proximity of a mile or less. All Tribes in Oklahoma rely heavily on the revenues from casinos and the Kiowa Tribe and Comanche Nation have presented no evidence of any Tribe or even their own Tribes suffering dire and immediate economic

---

[3] https://www.500nations.com/Oklahoma_Casinos.asp

[4] https://www.nigc.gov/images/uploads/GamingTribesABC.pdf

consequences as a result of another Tribe opening a new casino near one of their operations. Thus, the Comanche Nation and Kiowa Tribe's claims, based on a few lines from declaration of tribal officials who have shown no real proof of their involvement in the drafting of tribal budgets or in the allocation of tribal funds, of imminent, immediate, and irreputable economic harm to their Tribes and members form a facility that will at best operate 50 to 75 gaming machines in an isolated location in Southwest, Oklahoma meets no standard outlined by this or any other courts as it relates to proving an irreputable injury. Defendant's Exhibit 1 on page ten states that there are 73,440 gaming machines in Oklahoma, yet the Comanches Nation and Kiowas Tribe want this Court to believe that 50 to 75 more will mean absolute economic ruin for their Tribe despite the fact that they employ thousands of machines already.[5]

       The Plaintiffs have not provided any evidence of danger other than mere speculation. Their false and unsubstantiated assumptions on their loss revenues are completely unproven. Plaintiffs, by their own admissions operate nine, soon to be eleven, casinos among them within the same jurisdictional area. See Declaration of Mia Tahdooahnippah ¶4 and Declaration of Lindy Waters ¶5. Clearly an added casino is not the issue, it is that it is the FSAT is attempting to open a casino. Competition is not sufficient to claim irreparable injury.

       The second prong concerns whether a threatened injury outweighs any purported damage of an injunction. As discussed in prong one, the Plaintiffs have provided this court with no evidence that allowing the FSAT to continue with its plan of opening up its Casino will in any way impact their revenues especially in might that the all the Tribe continue to open. If there were, in fact, injury then the Plaintiffs would not be opening up more of their own casinos. However, preventing the FSAT from opening its Casino would severely damage the FSAT. The FSAT has spent time,

---

[5] Defendant's Exhibit 1, page 15.

money, and resources in preparing for this operation. The purpose of the Casino is to provide economic development for the FSAT so that it too, like its counterparts, may provide essential services for its members. The FSAT is at a disadvantage than its counterparts because it owns less property, and only has one casino that generates revenue, while Plaintiffs generate enough revenue that they can each justify the opening of an additional casino.

Granting the injunction would be averse to public interest because it would be hindering the FSAT which has followed all the rules and requirements in getting the parcel placed into trust and followed the NIGC's Part 559 regulations in using its land for a legitimate economic purpose as envisioned in the Indian Gaming Regulatory Act (IGRA).[6] In addition, Congress in passing the IGRA set out the NIGC as the agency task to regulate gaming pursuant to the IGRA.[7] To allow the Kiowa Tribe or the Comanche Nation to try to assume that role would be contrary to Congress' intent and declarations when passing IGRA and present a circumstance that would be wholly contrary to public policy by having Tribes trying to regulate each other in violations of federal laws and sovereignty.

The property in question is held in trust by the United States for the benefit and use of the FSAT. This land is "Indian Lands" as that term is used in IGRA.[8]  Under IGRA § 2710(b)(1), "[a]n Indian tribe may engage in or license and regulate, Class II gaming on Indian lands within

---

[6] 25 U.S.C. § 2701 (5) Indian tribes have the exclusive right to regulate gaming activity on Indian lands if the gaming activity is not specifically prohibited by Federal law and is conducted within a State which does not, as a matter of criminal law and public policy, prohibit such gaming activity.

[7] 25 U.S. Code § 2702 – the purpose of this act is to – (3) to declare that the establishment of independent Federal regulatory authority for gaming on Indian lands, the establishment of Federal standards for gaming on Indian lands, and the establishment of a National Indian Gaming Commission are necessary to meet congressional concerns regarding gaming and to protect such gaming as a means of generating tribal revenue.

[8] Indian lands are defined in IGRA § 2704 (3) as: "all lands within the limits of any Indian reservation; and any lands title to which is either held in trust by the United States for the benefit of any Indian tribe or individual or held by any Indian tribe or individual subject to restriction by the United States against alienation and over which an Indian tribe exercises governmental power."

such Tribe's jurisdiction." IGRA § 2710(d)(1) provides that "Class III gaming activities shall be lawful on Indian lands" only if such activities are conducted by an ordinance or resolution adopted by the governing body of the tribe having jurisdiction over such lands and approved by the NIGC; and conducted in conformity with a Tribal/State Compact." The Tribe has a Gaming Ordinance and Compact. Thus, the Tribe can game on this property.

The FSAT has owned that property in trust 2001. FSAT has already been operating a convenience store and gas station on this property since May 18, 2018. Yet, the Kiowa Tribe and Comanche Nation said nothing and waited until the Fort Sill Apache spent hundreds of thousands on the casino and now want to prevent the opening of the facility. If this were really an emergency situation, why would Plaintiffs wait until the eleventh hour to seek such relief.

1. **THE FORT SILL APACHE TRIBE IS IMMUNE FROM SUIT.**

   a. **The Fort Sill Apache Tribe has not Waived Sovereign Immunity.**

It is an undisputed fact that FSAT is a federally recognized Indian Tribe. As a federally recognized Indian tribe with inherent sovereignty, the FSAT is immune from suit. Tribal sovereign immunity is a well-established principle, see *U.S. v. U.S. Fidelity Guar. Co.,* 309 U.S. 506, 512 (1940); *Michigan v. Bay Mills Indian Cmty.,* 572 U.S. at 788; *Williams v. Poarch Band of Creek Indians,* 839 F.3d 1312, 1325 (11th Cir. 2016). "As a matter of federal law, a tribe is subject to suit only where Congress has authorized the suit, or the tribe has waived its immunity." *Kiowa Tribe of Okla. v. Manufacturing Technologies,* 523 U.S. 751, (1998). If Congress abrogates a tribe's sovereign immunity, it must make it "unmistakably clear" *Florida v. Seminole Tribe of Florida*, 181 F.3d 1237, 1242 (11th Cir. 1999). Likewise, any waiver of sovereign immunity by the tribe must be "unequivocally expressed." *United States v. Testan*, 424 U. S. 392, 399 (1976). This sovereign immunity extends to those acting in their official capacities. A defendant in an

official capacity action—where the relief sought is only nominally against the official and in fact is against the official's office and thus the sovereign itself—may assert sovereign immunity. *Kentucky v. Graham,* 473 U. S. 159, 167 (1985); and *Nahno-Lopez v. Houser*, 625 F.3d 1279 (10th Cir. 2010)

Plaintiffs have presented no evidence in their Complaint that FSAT has waived its immunity from suit or cited any statute waiving FSAT's sovereign immunity. The Plaintiffs also claim they are seeking claims against the FSAT Defendants in their individual capacities; however, this is a guise. In the context of lawsuits against individuals, courts look to whether the sovereign is the real party in interest to determine whether sovereign immunity bars the suit, see *Hafer v. Melo*, 502 U. S. 21, 25. It is clear from the issues raised in Plaintiff's Complaint are only actions by FSAT officials taken in the official capacity. See Paragraphs 80-85 wherein the Plaintiff's again assert the individual's capacities within FSAT. The Plaintiffs might attempt to circumvent the sovereign immunity argument by citing their meritless claims of racketeering 18 U.S.C. §1962(c), and illegal gaming 18 U.S.C. §1166, both of which are found in the United States *Criminal* Code, but those potential arguments might hold water if, in fact, the individuals were being prosecuted for any crimes. However, even those claims do not constitute a waiver of sovereign immunity. Accordingly, this action should be summarily dismissed for lack of jurisdiction.

## CONCLUSION

The Plaintiffs have also failed to meet the requirements for issuing a temporary restraining order and therefore Plaintiffs' Motion for Temporary Restraining Order should be denied.

Respectfully submitted,

S/ Victoria Holland
Victoria Holland
(OBA 33197 WDOK 17-151)
vholland@devollaw.com

        Devol and Associates
        15205 Traditions Lake Parkway
        Edmond, OK 73003
        Telephone (405)225-2300
        Facsimile (405)225-2301

        S/ Phillip Thompson
        Phillip E. Thompson
        (to be admitted pro hac vice)
        Phillipthomme.com
        P.O. Box 467
        Point of Rocks, MD 21777
        Telephone (301)535-0488
        Facsimile (202)905-0057

        S/ Valerie Devol
        Valerie Devol
        vdevol@devollaw.com
        Devol and Associates
        15205 Traditions Lake Parkway
        Edmond, OK 73003
        Telephone (405)225-2300
        Facsimile (405)225-2301

        S/ A. Daniel Woska
        A.  Daniel Woska
        dwoska@devollaw.com
        Devol and Associates
        15205 Traditions Lake Parkway
        Edmond, OK 73003
        Telephone (405)225-2300
        Facsimile (405)225-2301

        *Attorneys for Fort Sill Apache Defendants*

## CERTIFICATE OF DELIVERY

I hereby certify that on this 27 day of May 2022, a true and correct copy of the foregoing was delivered to the following:

Forrest Tahdooahnippah
Amy Weisgram
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402

forrest@dorsey.com
weisgram.amy@dorsey.com

Ryland Rivas
Rivas Law
628 W. Choctaw Ave
Chickasaw, OK 73018
ryalnd@rivaslaw.com

                                                      S/Victoria Holland