# Exhibit 1

# MEMORANDUM

To:  Philip N. Hogen, Chairman

Through: Penny J. Coleman, Acting General Counsel

From:  Jo-Ann M. Shyloski, Senior Attorney

Date:  11/15/05

Subject: Kiowa Indian Tribe of Oklahoma – Gaming Site

## Introduction

Pursuant to the Pre-opening Agreement executed between the Kiowa Indian Tribe of Oklahoma and the National Indian Gaming Commission (NIGC), the NIGC must determine whether certain land held in trust by the United States on behalf of the Tribe constitutes Indian lands on which the Tribe may lawfully conduct gaming pursuant to the Indian Regulatory Act ("IGRA"), 25 U.S.C. § 2701 *et seq*. *See* Pre-opening Agreement, Article II ¶ 4. The specific land at issue is the Tribe's proposed gaming site, a 30-acre tract of land in Cotton County, Oklahoma.

## Background

The Kiowa Indian Tribe of Oklahoma ("Tribe") is a federally recognized Indian tribe. *See* 67 Fed. Reg. 46328 (2002). The land at issue is held in trust by the United States on behalf of the Tribe and is described as:

S ½ NE ¼ NE ¼, E ½ NW ¼ NE ¼ NE ¼ , S ½ NE ¼ NE ¼ NE ¼ of Section 11, Township 5 South, Range 13 West of the Indian Meridian, Cotton County, Oklahoma, containing 30.00 acres, more or less.

*See* BIA Certification of Trust Status, dated Feb. 9, 2001 (Exhibit 1); BIA Certification of Trust Status, dated Jan. 31, 2001 (Exhibit 2).

This property is a portion of the original allotment of Nellie Doyah, a Kiowa tribal member and an original Kiowa allottee, No. 3030, and is located within the exterior boundaries of the former Kiowa, Comanche, and Apache reservation, established by the Treaty of October 21, 1867. *Id.* The original allotment was approved by the Secretary of the U.S. Department of the Interior in a schedule of allotments on October 16, 1906 and June 18, 1908. *See* Allotment Trust Patent, dated Dec. 7, 1908 (Exhibit 3). Since that time, the portion of the property at issue has been held in trust. *See* BIA Chain of Trust Title Report, dated April 1, 2005 (Exhibit 4). On May 10, 2000, this portion of the original allotment was transferred by Evans Ray Satepauhoodle, heir to the original allottee, and Genevieve Satepauhoodle, his wife, to the United States in trust for the Tribe.

*See* BIA Certification of Trust Status, dated Feb. 9, 2001 (Exhibit 1); BIA Certification of Trust Status, dated Jan. 31, 2001 (Exhibit 2).

## Applicable Provisions of IGRA

An Indian tribe may engage in gaming under IGRA only on "Indian lands." 25 U.S.C. § 2710(b). In addition, if the proposed lands are trust or restricted lands, rather than land within the limits of a present-day Indian reservation, the tribe may conduct gaming only if it exercises "governmental power" over those lands. 25 U.S.C. § 2703(4)(B); 25 C.F.R. § 502.12(b).

IGRA defines "Indian lands" as:

> (A) all lands within the limits of any Indian reservation; and
> (B) any lands title to which is either held in trust by the United States for the benefit of any Indian tribe or individual or held by any Indian tribe or individual subject to restriction by the United States against alienation and over which an Indian tribe exercises governmental power.

25 U.S.C. § 2703(4).

NIGC regulations further clarify the Indian lands definition.

> Indian lands means:
>
> (a) Land within the limits of an Indian reservation; or
> (b) Land over which an Indian tribe exercises governmental power and that is either –
>
> (1) Held in trust by the United States for the benefit of any Indian tribe or individual; or
> (2) Held by an Indian tribe or individual subject to restriction by the United States against alienation.

25 C.F.R. § 502.12. Lands that do not qualify as Indian lands under IGRA generally are subject to state gambling laws. *See National Indian Gaming Commission: Definitions Under the Indian Gaming Regulatory Act*, 57 Fed. Reg. 12382, 12388 (1992).

The question of whether a tribe possesses "jurisdiction" and "exercises governmental power" over land on which it proposes to conduct gaming can arise under a variety of circumstances. *See, e.g., Rhode Island v. Narragansett Indian Tribe*, 19 F.3d 685, 701-703 (1st Cir. 1994), *cert. denied*, 513 U.S. 919 (1994), superseded by statute as stated in *Narragansett Indian Tribe v. National Indian Gaming Commission*, 158 F.3d 1335 (D.C. Cir. 1998); *Miami Tribe of Oklahoma v. United States*, 5 F. Supp. 2d 1213, 1217-18 (D.Kan. 1998) (Miami II) (a tribe must have jurisdiction to exercise governmental power); *State ex rel. Graves v. United States*, 86 F. Supp. 2d 1094, 1099 (D. Kan. 2000), *aff'd and remanded, Kansas v. United States*, 249 F.3d 1213 (10th Cir. 2001); *Miami Tribe of Oklahoma v. United States*, 927 F. Supp. 1419, 1423 (D. Kan. 1996) (Miami I).

In the present matter, to determine whether the land at issue constitutes "Indian lands," the NIGC must determine, because the trust land is not within the boundaries of a present-day Indian reservation: (1) whether the tribe has jurisdiction over the land, and (2) whether the tribe exercises governmental power over it. The Tribe's proposed gaming site will be considered within this analytical framework.

### Land Held In Trust

As detailed above, the land at issue is held in trust by the United States on behalf of the Tribe. *See* BIA Certification of Trust Status, dated Feb. 9, 2001 (Exhibit 1); BIA Certification of Trust Status, dated Jan. 31, 2001 (Exhibit 2). The legal description of the land is as follows:

S ½ NE ¼ NE ¼, E ½ NW ¼ NE ¼ NE ¼ , S ½ NE ¼ NE ¼ NE ¼ of Section 11, Township 5 South, Range 13 West of the Indian Meridian, Cotton County, Oklahoma, containing 30.00 acres, more or less.

*Id*.

Further, as detailed above, the parcel is a portion of the original allotment of a Kiowa tribal member and is located within the exterior boundaries of the former Kiowa, Comanche, and Apache reservation, established by the Treaty of October 21, 1867. *Id.* The original allotment was approved by the Secretary of the U.S. Department of the Interior in a schedule of allotments on October 16, 1906 and June 18, 1908. *See* Allotment Trust Patent, dated Dec. 7, 1908 (Exhibit 3). Since that time, the portion of the property at issue has been continuously held in trust. *See* BIA Chain of Trust Title Report, dated April 1, 2005 (Exhibit 4). This parcel was transferred on May 10, 2000 to the United States to hold in trust for the Tribe from Evans Ray Satepauhoodle, heir of the original allottee, and Genevieve Satepauhoodle, his wife.[1] *See* BIA Certification of Trust Status, dated Feb. 9, 2001 (Exhibit 1) (attached Deed to Restricted Indian Land, dated May 10, 2000); BIA Certification of Trust Status, dated Jan. 31, 2001 (Exhibit 2).

Because the land at issue is "held in trust by the United States for the benefit of an Indian tribe," it satisfies the first element of the "Indian lands" definition – that the land be held in trust. *See* 25 U.S.C. § 2703 (4)(B).

---

[1] Because the property at issue has remained in trust, on behalf of a Kiowa tribal members and then on behalf of the Kiowa Tribe, the prohibition against Indian gaming on parcels acquired in trust after October 17, 1988 and the exceptions thereto set forth in 25 U.S.C. § 2719 do not apply. Moreover, there is a presumption in favor of tribal jurisdiction over lands held in trust for a tribe's members. *See DeCoteau v. District County Court*, 420 U.S. 425, 427 n.2 and 446 (1975) (Indian allotments, the Indian titles to which have not been extinguished, remain subject to tribal and federal jurisdiction.); *Mustang Production Co. v. Harrison*, 94 F.3d 1382, 1385 (10th Cir. 1996), *cert. denied Mustang Fuel Corp. v. Hatch*, 520 U.S. 1139 (1997) ("Indian tribes have jurisdiction over lands that are Indian country, and allotted lands constitute Indian country.").

### Jurisdiction

Because the land at issue is not within the boundaries of a present day Indian reservation, the Tribe has the additional burden of establishing that it exercises "governmental power" over the parcel it intends to use for gaming purposes. *See* 25 C.F.R. § 502.12(b). "Tribal jurisdiction" is a threshold requirement to the exercise of governmental power. *See, e.g., Rhode Island v. Narragansett Indian Tribe*, 19 F. 3d 685, 701-703 (1st Cir. 1994), *cert. denied*, 513 U.S. 919 (1994), superseded by statute as stated in *Narragansett Indian Tribe v. National Indian Gaming*

*Commission*, 158 F.3d 1335 (D.C. Cir. 1998) (In addition to having jurisdiction a tribe must exercise governmental power in order to trigger [IGRA]); *Miami Tribe of Oklahoma v. United States*, 5 F. Supp. 2d 1213, 1217-18 (D. Kan. 1998) (Miami II) (A tribe must have jurisdiction in order to be able to exercise governmental power); *Miami Tribe of Oklahoma v. United States*, 927 F. Supp. 1419, 1423 (D. Kan. 1996) (Miami I) (the NIGC implicitly decided that in order to exercise governmental power for purposes of 25 U.S.C. § 2703(4), a tribe must first have jurisdiction over the land.): *State ex. rel. Graves v. United States*, 86 F. Supp 2d 1094 (D. Kan. 2000), *aff'd and remanded*, *Kansas v. United States*, 249 F. 3d 1213 (10th Cir. 2001). This interpretation is consistent with IGRA's language limiting the applicability of its key provisions to "[a]ny Indian tribe having jurisdiction over Indian lands," or to "Indian lands within such tribe's jurisdiction." 25 U.S.C. §§ 2710(d)(3)(A), 2710(b)(1)); *see also Rhode Island v. Narragansett Indian Tribe*, 19 F.3d 685, 701-703 (1st Cir. 1994), *cert. denied* 513 U.S. 919 (1994). As a threshold matter, we must therefore analyze whether the Tribe possesses jurisdiction over the trust land at issue.

As a general matter, tribes are presumed to possess tribal jurisdiction within "Indian country." *See South Dakota v. Yankton Sioux Tribe*, 522 U.S. 329 (1998). The Supreme Court has stated that Indian tribes are "invested with the right of self-government and jurisdiction over the persons and property within the limits of the territory they occupy, except so far as that jurisdiction has been restrained and abridged by treaty or act of Congress." *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 140 (1982).

Historically, the term "Indian country" has been used to identify land that is subject to the "primary jurisdiction . . . [of] the Federal Government and the Indian tribe inhabiting it." *Alaska v. Native Village of Venetie Tribal Gov't*, 522 U.S. 520, 527 n.1 (1998). The U.S. Code defines "Indian country" as:

(a) all land within the limits of any Indian reservation…,
(b) all dependent Indian communities…, and
(c) all Indian allotments, the Indian titles to which have not been extinguished….

18 U.S.C. § 1151. The *Venetie* court observed that Section 1151 reflects the two criteria the Supreme Court "previously . . . had held necessary for a finding of 'Indian country' … first, [the lands] must have been set aside by the Federal Government for the use of the Indians as Indian land; second, they must be under federal superintendence." *Venetie*, 522 U.S. at 527. Prior to the enactment of section 1151 in 1948, the Court had already found that reservation lands and allotments satisfied those requirements. *See*, *e.g.*, *United States v. Pelican*, 232 U.S. 442, 449 (1914) (Indian country includes individual Indian allotments held in trust by the United States because they "remain Indian lands set apart for Indians under governmental care"). The Tenth Circuit Court of Appeals confirmed that "official designation of reservation status is not necessary for the property to be treated as Indian Country under 18 U.S.C. § 1151," rather, "it is enough that the property has been validly set apart for the use of the Indians, under federal superintendence." *United States v. Roberts*, 185 F.3d 1125, 1133 n.4 (10 Cir. 1999). Moreover, the Tenth Circuit Court of Appeals has held that "lands owned by the federal government in trust for Indian tribes are Indian Country pursuant to 18 U.S.C. § 1151." *Id.* at 1131.$^{th}$

Several Supreme Court decisions hold or assume that tribal trust lands are Indian country although they are not part of a formal reservation. In *Oklahoma Tax Commission v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, the Supreme Court concluded that lands held in trust by the United States for the Tribe were "validly set apart for the use of the Indians as such, under the superintendence of the Government," and therefore were Indian country, with the consequence that the State did not have the authority to tax sales of goods to tribal members that occurred on those lands. 498 U.S. 505, 511 (1991). The *Potawatomi* Court specifically rejected the contention that the tribal trust land was not Indian country because it was not a reservation, noting that no "precedent of this Court has ever drawn the distinction between tribal trust land and reservations that Oklahoma urges." *Id*; s*ee also Oklahoma Tax Comm'n v. Chickasaw Nation*, 515 U.S. 450, 452-453 and n.2 (1995) (treating tribal trust lands as Indian country); *Oklahoma Tax Comm'n v. Sac & Fox Nation*, 508 U.S. 114, 123-125 (1993) (same).

Here, consistent with the aforementioned court decisions, the Kiowa Tribe's trust land, although not a formal reservation, is "Indian country," within the meaning of 18 U.S.C. § 1151. The land has been "validly set-aside for the tribe under the superintendence of the federal government." *See United States v. McGowan*, 302 U.S. at 539, *quoted in Venetie*, 522 U.S. at 529. It is unnecessary to decide whether the Tribe's trust lands are more properly categorized as an informal reservation under section 1151(a) or as a dependent Indian community under section 1151(b) because, regardless of category, the property in this case, owned by the United States in trust for the Tribe, is Indian country. *See Roberts*, 185 F.3d at 1131, 1133. The Nation's trust land comes within at least one of the three statutory categories, because the trust land possesses the two characteristics of Indian country reflected in 18 U.S.C. § 1151: (1) it was validly set-aside for the Tribe and (2) is under the superintendence of the Federal government. *See Venetie*, 522 U.S. at 527. Accordingly, because the trust land is Indian country, we conclude that the Tribe has jurisdiction over it.

### Exercise of Governmental Power

In order for the land to fit the definition of "Indian lands," the Tribe must also exercise governmental power over the parcel. *See* 25 U.S.C. § 2703(4)(B); *see also Narragansett Indian Tribe,* 19 F.3d at 703; *Miami II*, 5 F. Supp.2d at 1218 (jurisdiction alone is insufficient to satisfy the 'exercise of governmental power' requirement).

IGRA is silent as to how a tribe exercises governmental power. Furthermore, the manifestation of governmental power can differ dramatically depending upon the circumstances. For this reason, NIGC has not formulated a uniform definition of "exercise of governmental power," but rather decides that question in each case based upon all the circumstances. *See National Indian Gaming Commission: Definitions Under the Indian Gaming Regulatory Act*, 57 Fed. Reg. 12382, 12388 (1992).

The First Circuit Court of Appeals in *Rhode Island v. Narragansett Indian Tribe* found that satisfying this requirement depends "upon the presence of concrete manifestations of [governmental] authority." *Narragansett Indian Tribe*, 19 F.3d at 703. Such examples include the establishment of a housing authority, administration of health care programs, job training, public safety, conservation, and other governmental programs. *Id.* Thus, "[m]eeting this

requirement does not depend upon the Tribe's theoretical authority," but upon the presence of tangible examples of that authority. *Id.*

In *Cheyenne River Sioux Tribe v. State of South Dakota*, 830 F. Supp. 523 (D.S.D. 1993), *aff'd* 3 F.3d 273 (8th Cir. 1993), the court noted that several factors might be relevant to a determination of whether off-reservation trust lands constitute Indian lands. The factors were:

> (1) Whether the areas are developed;
> (2) Whether the tribal members reside in those areas;
> (3) Whether any governmental services are provided and by whom;
> (4) Whether law enforcement on the lands in question is provided by the Tribe; and
> (5) Other indicia as to who exercises governmental power over those areas.

*Id.* at 528. The Court did not opine regarding the weight given any factor or whether the absence or presence of one factor was determinative.

The Tribe, through its counsel, submitted a letter detailing examples of what it considers to be the exercise of governmental power over the subject trust lands. *See* Letter from Steven J.W. Heeley and Todd Araujo to Philip N. Hogen of May 12, 2005. We find the following actions significant:

> 1) the Tribe fenced the property to restrict access and posted signs to provide notice that the property and trespassers upon it are subject to the jurisdiction of the Kiowa Tribe;
>
> 2) the Tribe is developing the property and, in this regard, conducted an environmental assessment of the property and graded portions of the property for purposes of construction; and
>
> 3) the Tribe has also adopted a several tribal resolutions authorizing and approving certain governmental activities and oversight regarding the property and/or lands within the Tribe's jurisdiction, including a liquor ordinance, governing the sale, use, and purchase of alcoholic beverages; a gaming ordinance, governing the conduct of gaming; a resolution authorizing financing, development, and construction of a gaming facility on the property; and a resolution authorizing a tribal entity to have exclusive use of the property for purposes of gaming.

These "concrete manifestations of governmental authority" demonstrate that the Tribe in fact exercises governmental authority over the trust land at issue. Thus, we are satisfied that the property at issue satisfies the statutory and regulatory definition of "Indian lands."

**Conclusion**

IGRA permits tribes to conduct gaming on Indian lands only if they have jurisdiction over those lands, and only if they utilize their jurisdiction to exercise governmental power which will enable the tribe, through appropriate ordinances, to satisfy the statute's substantial and detailed requirements for the regulation of gaming. In this instance, the Kiowa Tribe meets these requirements and the property at issue constitutes Indian lands for purposes of IGRA.