# Exhibit 2



April 23, 2008

*Via U.S. Mail and Facsimile*

A.D. Ellis, Principal Chief
Muscogee (Creek) Nation
P.O. Box 580
Hwy. 75, Loop 56
Okmulgee, OK 74447
Fax: 918-732-7600

Re: Holdenville Site Land Opinion

Dear Principal Chief Ellis:

On February 26, 2007, the National Indian Gaming Commission (NIGC) received a request for an Indian lands opinion from the Muscogee (Creek) Nation (Nation). The Nation requested an opinion for the purposes of potential gaming under the Indian Gaming Regulatory Act (IGRA) on the proposed site. I conclude that these are Indian lands on which the Nation may conduct gaming.

The Muscogee (Creek) Nation is a federally recognized Indian tribe[1] and desires to conduct gaming on a 2.75 acre tract located in Hughes County, Oklahoma (Holdenville or site). The land is currently held in trust by the United States for the benefit of the Nation[2] and is legally described as follows:

> Lots One (1) through Thirty-two (32), inclusive, in Block Twenty (20) of Capitol Heights Addition to Holdenville, Hughes County, Oklahoma, according to the recorded plat thereof, as to Surface Only.[3]

The Nation purchased the parcel from the Holdenville School District on September 9, 1985, and executed a Warranty Deed to the United States in order to place the parcel into trust.[4] On September 11, 1987, the land was accepted in trust by the Bureau of Indian Affairs of the United States Department of the Interior.[5] The Hughes County Recorder's Office recorded the deed, proclaiming the parcel to be held in trust by the United States on behalf of the Nation on September 28, 1987.[6]

---

[1] *See* 72 Fed. Reg. 13648, 13649 (2007).
[2] Warranty Deed from Muscogee (Creek) Nation, a federally recognized tribe, to the United States, as trustee (September 28, 1987) (on file with the NIGC).
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.*

## Applicable Law

An Indian tribe may conduct gaming on lands that are determined to be "Indian lands" as defined under IGRA. *See* 25 U.S.C. §§ 2703(4), 2710(b) and (d). If the lands in question are not within a present day reservation, then the tribe must show that it has jurisdiction over the land and that it exercises governmental power over the land. *See* 25 U.S.C. § 2703(4)(B); 25 C.F.R. § 502.12(b).

Under IGRA, the term "Indian lands" means:

(A) All lands within the limits of any Indian reservation, and
(B) Any lands title to which is either held in trust by the United States for the benefit of any Indian tribe or individual or
held by any Indian tribe or individual subject to restriction by the United States against alienation and over which an Indian tribe exercises governmental power.

*See* 25 U.S.C. § 2703(4). Similarly, the NIGC regulations define Indian lands as:

(a) Lands within the limits of an Indian reservation, or
(b) Land over which an Indian tribe exercises governmental power and that is either,
   (1) Held in trust by the United State for the benefit of any Indian tribe or individual, or
   (2) Held by and Indian tribe or individual subject to restrictions by the United States against alienation.

*See* 25 C.F.R. § 502.12.

## Discussion

The Nation's parcel is not within the boundaries of a reservation, so the Nation must prove that it has jurisdiction and exercises governmental power over the parcel. The Nation acquired the parcel prior to October 1, 1988, and it has been held in trust for the Nation since that time.[7] Therefore, if the Nation exercises governmental power over the site, the Holdenville site will constitute Indian lands for the purpose of gaming.

Before determining whether the Nation exercises governmental power over land, we must consider whether the Nation has jurisdiction over the land. The finding of jurisdiction is a "threshold requirement" that must be completed before an examination of governmental power may occur. *See Rhode Island v. Narragansett Indian Tribe*, 19 F.3d 685, 701-703 (1st Cir. 1994), *cert. denied*, 513 U.S. 919 (1994), superseded by statute as stated in *Narragansett Indian Tribe v. National Indian Gaming Commission*, 158 F.3d 1335 (D.C.Cir. 1998) *(further citations omitted)*. Finding that a tribe has jurisdiction and exercises governmental power can occur in a myriad of ways. *See Narragansett Indian Tribe*, 19 F.3d at 701-703; *Miami Tribe of Oklahoma v. United States*, 927 F. Supp. 1419,

---

[7] Thus, 25 U.S.C. § 2719 is inapplicable to this decision.

2

1423 (D.Kan. 1996) (Miami I); *State ex rel. Graves v. United States*, 86 F. Supp. 2. 1094, 1098 (D.Kan. 2000), *aff'd and remanded*, *Kansas v. United States*, 249 F.3d 1213 (10th Cir. 2001).

**Jurisdiction**

The presumption of jurisdiction exists for any federally recognized tribe acting within the limits of "Indian Country." *See South Dakota v. Yankton Sioux Tribe*, 522 U.S. 329 (1998). This jurisdiction, an inherent sovereign power, can only be modified by a clear and explicit expression of Congress. *See Yankton Sioux Tribe*, 522 U.S. at 341; *see also Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 140 (1982).

Over time, the term "Indian Country" has referred to lands upon which the federal government and the Indian tribe that owns the land share primary jurisdiction. *See Alaska v. Native Village of Venetie Tribal Gov't*, 522 U.S. 520, 529 (1998). The term "Indian Country" is defined by 18 U.S.C. § 1151 as follows:

> (a) All lands within the limits of an Indian reservation under the jurisdiction of the United State Government, notwithstanding the issuance of any patent, including rights of way running through the reservation,
> (b) All dependent Indian communities within the borders of the United States, whether within the original or subsequently acquired territories thereof, and within or without the limits of a state, and
> (c) All Indian Allotments, the Indian titles to which have not been extinguished including rights of way running through the same.

In its review of 18 U.S.C. § 1151, the *Venetie* court found that the statute contains two of the indicia previously used to determine what lands constitute "Indian Country": (1) lands set aside for Indians and (2) Federal superintendence of those lands. *See Venetie*, 522 U.S. at 527. In Venetie, the court observed that Section 1151 reflects the two criteria the Supreme Court previously held necessary for a finding of "Indian Country." 522 U.S. at 527. Further, reservation status is not necessary for a finding of "Indian Country."[8]

The Tenth Circuit found that "[o]fficial designation of reservation status is not necessary for the property to be treated as Indian Country under 18 U.S.C. § 1151," rather, "it is enough that the property has been validly set aside for the use of the Indians, under federal superintendence." *United States v. Roberts*, 185 F.3d 1125, 1133, n.4 (10th Cir. 1999). Further, "reservation status is not dispositive and lands owned by the federal government in trust for Indian tribes are Indian Country pursuant to 18 U.S.C. § 1151." *Roberts*, 185 F.3d at 1130. Thus, as long as the land in question is in trust, the courts make no distinction between the types of trust lands that can be considered "Indian

---

[8] *See Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 498 U.S. 505, 511 (1991) ("No precedent of this Court has ever drawn the distinction between tribal trust land and reservation that Oklahoma urges.")

3

Country." *Roberts*, 185 F.3d at 1131, n.4. Accordingly, lands held in trust, fee simple restricted status, allotments and reservations are all considered "Indian Country."[9]

In this case, the Federal government placed the parcel into trust on behalf of the Nation prior to October 17, 1988.[10] Such an act qualifies as setting it aside for the Nation. Superintendence can be seen when the federal government appears to act "as a guardian" for the lands and take some active involvement. *See Venetie*, 522 U.S. at 532; *see also Roberts*, 185 F.3d at 1134. In the instant case, the language of the deed, and its acceptance by the BIA, indicates superintendence. The acceptance of the deed by the BIA marks an active acceptance of the role as trustee and all duties that encompass the responsibility. Therefore, the Nation's trust parcel constitutes Indian Country, and the Nation is presumed to have jurisdiction over it.

However, it is not enough to find that the parcel in question is definable as "Indian Country" which reflects the Nation's jurisdiction, IGRA also requires a finding of "exercise of governmental authority" for the parcel to qualify as "Indian lands" for purposes of gaming. *See* 25 U.S.C. § 2703(4); *see also Narragansett Indian Tribe*, 19 F.3d at 703.

**Governmental Power**

IGRA is silent as to how a tribe exercises governmental power and its legislative history does not illuminate the meaning of "governmental power." *See Kansas*, 249 F.3d at 1228; *Miami Tribe of Oklahoma (I)*, 927 F. Supp. at 1423. Although Congress did not address, courts have stated that an assertion of theoretical jurisdiction is not sufficient and must be accompanied by "concrete manifestations of that authority." *Narragansett Indian Tribe*, 19 F.3d at 703. The establishment of programs such as a housing authority to participate in federal programs and interact with federal agencies is evidence of self-governance. *Id*. Obtaining state status for purposes of the Clean Water Act and having "substantial governmental duties and powers" to implement the Act indicates an exercise of governmental authority. *Id*. The administration of health care programs, job training, education, community services and public safety are examples of the exercise of governmental power. *Id*.

There is no uniform set of proofs by which a tribe may show active exercise of governmental power. Therefore, the NIGC decides this issue on a case-by-case basis. *See National Indian Gaming Commission: Definitions Under the Indian Gaming Regulatory Act*, 57 Fed. Reg. 12382, 12388 (1992).

As an aid for making such determinations, the following factors are often used to assist in the analysis:

---

[9] *See United States v. Sandoval*, 231 U.S. 28 (1913) (fee restricted land as Indian Country); *United States v. Pelican*, 232 U.S. 442 (1914) (allotment as Indian Country); *United States v. McGowan*, 302 U.S. 535 (1938) (trust land as Indian Country).
[10] *See Supra* Note 1.

4

> (1) Whether the areas are developed;
> (2) Whether tribal members reside in the areas;
> (3) Whether any governmental services are provided and by whom;
> (4) Whether the tribe is providing law enforcement;
> (5) Other indicia indicating a tribal exercise of governmental power.

*See Cheyenne River Sioux Tribe v. South Dakota*, 830 F. Supp. 523, 528 (1993).

The First Circuit Court opined that a formidable list of tribal programs affecting a parcel provided adequate proof of exercise of governmental power over that particular parcel. *Narragansett*, 19 F.3d at 703. Among the programs listed were the following: HUD programs, health services programs, status as state for EPA cleanup, and public safety, community service and job training programs. *Id*.

As to the Holdenville site, the Nation provided proof of development in regards to the parcel. A concrete building and parking lot occupy the space while the remaining space is taken up by a playground. *See* Letter from Kasey McKenzie, Assistant Attorney General to Rebecca Chapman, NIGC Staff Attorney of 9/20/2007 at 2. The building on the parcel houses the retail store and offices for tribal governmental service programs. *Id*. The Nation issues licenses for the collection of sales tax and the sale of cigarettes at a retail store located on the parcel. *See* Letter from A.D. Ellis, Principal Chief of the Muscogee (Creek) Nation to Phil Hogen, Chairman of the National Indian Gaming Commission of 2/20/2007 at 2. The existence of the store and the use of the building for numerous governmental programs indicate that the parcel is developed and used to provide governmental services, which are criteria set forth in *Cheyenne River Sioux*.

The Nation also provided proof that tribal members reside in the area and use the site. Currently, 1,022 tribal members live in Holdenville and 3,986 members reside in Hughes County where the parcel is located. *See* Letter from Kasey McKenzie, Assistant Attorney General to Rebecca Chapman, NIGC Staff Attorney of 9/20/2007 at 1. Tribal members live anywhere from a few miles away to right next to the site. *Id*. All of these members have access to the tribal governmental services provided on the site. The evidence indicates that the site is located within the tribal community and that community remains active on and around the site. This evidence satisfies the second criteria of *Cheyenne River Sioux*.

The Nation has also provided a list of programs that take place on the Hodlenville site. *See* Letter from Kasey McKenzie, Assistant Attorney General to Rebecca Chapman, NIGC Staff Attorney of 9/20/2007 at 1-2. The provision of governmental services is yet another indication of an exercise of governmental power. *Cheyenne River Sioux*, 830 F.Supp. at 528. Currently, the Nation has a facility use agreement with the Indian Community of Holdenville for community development programs located on the site. *Id*. at 3. The Nation conducts housing, health, enrollment and veteran's services out of the concrete building on this site. *See* Letter from Kasey McKenzie, Assistant Attorney General to Rebecca Chapman, NIGC Staff Attorney of 9/20/2007 at 1-2. An after-school language program also operates on the site, and the Nation directly operates a child

development program on the site. *Id.* This activity is indicative of the Nation providing governmental services on the site in fulfillment of the third criteria of *Cheyenne River Sioux*.

In addition, the Nation provided evidence of a law enforcement presence on the site. The Nation's police force responds to calls and patrols the area surrounding the site. *See* Letter from A.D. Ellis, Principal Chief of the Muscogee (Creek) Nation to Phil Hogen, Chairman of the National Indian Gaming Commission of 2/20/2007 at 3. Such evidence indicates an exercise of governmental power through the use of law enforcement services to the site. In light of the above examples, the Nation actively exercises governmental authority over the site.

As a consequence, given its jurisdiction and exercise of governmental authority over the site, I conclude that the Nation's parcel can be considered "Indian lands" for the purposes of gaming.

### Conclusion

The parcel at issue is a pre-1988 trust acquisition over which the Nation exercises jurisdiction and governmental power. Therefore, I conclude that the site is Indian lands for the purpose of gaming. The Department of the Interior, Office of the Solicitor, concurs with this result.

This opinion is advisory only and does not constitute final agency action subject to review in federal district court. If you have any questions, Rebecca Chapman, Staff Attorney, is assigned to this matter.

Sincerely,

*Penny J Coleman*

Penny J. Coleman
Acting General Counsel


cc: Tim Harper, Region V Director
Drew Edmondson, Attorney General for the State of Oklahoma