UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **KIOWA TRIBE et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | Case No. CIV-22-425-G |
| ) | |
| **UNITED STATES DEPARTMENT** ) | |
| **OF THE INTERIOR et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## ORDER

This matter is before the Court on the Motion for Temporary Restraining Order and Supporting Brief (Doc. Nos. 3, 4) filed by Plaintiffs Kiowa Tribe and Comanche Nation on May 25, 2022. The Federal Defendants[1] and the FSA Defendants[2] have each filed a Response (Doc. Nos. 18, 21). The Court has considered the affidavits and documentary evidence submitted with the Motion and the Responses. Further, the Court held a hearing on the Motion on May 31, 2022, with all parties presenting argument through counsel.

---

[1] United States Department of the Interior ("DOI"); Bryan Newland, in his official capacity as Assistant Secretary—Indian Affairs; and Darryl LaCounte, in his official capacity as Director of the Bureau of Indian Affairs ("BIA").

[2] The FSA Defendants are each sued in both their individual and official capacities and are identified as: Lori Gooday Ware, Fort Sill Apache Tribe ("FSAT") Chairwoman; Pamela Eagleshield, FSAT Vice-Chairman; James Dempsey, FSAT Secretary-Treasurer; FSAT Committee Members Jeanette Mann, Jennifer Heminokeky, and Dolly Loretta Buckner; Philip Koszarek, FSAGC ("Fort Sill Apache Gaming Commission") Chairman; Naomi Harford, FSAGC Vice-Chairman; and FSAGC Commissioners Michael Crump, Lauren Pinola, and Debbie Baker.

I.  Background

Plaintiffs filed this action on May 24, 2022, raising three claims "to prevent an illegal casino from conducting unlawful gaming within Plaintiffs' reservation": (1) against the Federal Defendants, a declaration under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, that the Tsalote Allotment (also referred to as "Apache Wye") is not owned by FSAT; (2) against the FSA Defendants, "a declaration that [FSAT] may not conduct gaming on the Tsalote Allotment" because such gaming would violate the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701 et seq.; and (3) against the FSA Defendants, a declaration that gaming on the Tsalote Allotment by FSAT will violate RICO, 18 U.S.C. §§ 1961-1968.  Compl. (Doc. No. 1) ¶¶ 1, 58-105.  The Complaint seeks, in addition to these declaratory judgments, preliminary and permanent injunctive relief, costs, and attorney's fees.  *See id.* at 26-27.

II.  Findings

The Court makes the following factual findings, based upon its review of the undisputed allegations of the Complaint and the current record:

The Tsalote Allotment consists of 160 acres of land that lies within the boundaries of the former Kiowa-Comanche-Apache ("KCA") Reservation in present-day Caddo County in southwestern Oklahoma.[3]  In 1892, the United States "acquired a substantial portion of the KCA Reservation and allotted individual tracts of land to the individual

---

[3] The legal description of the Tsalote Allotment is: "the NE¼ of Section 33, Township 7 North, Range 11 West of the Indian Meridian, containing 160.00 acres, more or less." Fed. Defs.' Ex. 6 (Doc. No. 18-6) at 1; *accord* Compl. ¶ 26.

2

members of the three tribes." *Comanche Nation v. United States*, 393 F. Supp. 2d 1196, 1200-01 (W.D. Okla. 2005).

In 1901, the disputed 160 acres in this matter was allotted to George Tsalote, a Kiowa Tribe member. Pursuant to this allotment, the United States took the Tsalote Allotment in trust "for the sole use and benefit of" Mr. Tsalote. Fed. Defs.' Ex. 1 (Doc. No. 18-1) at 1. On June 26, 2001, the Tsalote Allotment was deeded by an unidentified "Apache, Oklahoma Indian" man and his wife to the "United States of America in trust for the Fort Sill Apache Tribe of Oklahoma." Fed. Defs.' Ex. 6, at 1.

In April of 2005, DOI approved FSAT's Class III Tribal Gaming Compact with the State of Oklahoma. *See* Compact (Compl. Ex. 3 (Doc. No. 1-3)); 72 Fed. Reg. 15720-01 (Apr. 2, 2007).[4] FSAT has been operating a gas station and convenience store on the Tsalote Allotment since at least 2018.

In September of 2020, FSAT requested expedited review pursuant to 25 C.F.R. § 559.2(a)(1) from the Chairman of the National Indian Gaming Commission ("NIGC") of FSAT's notice of intent to issue a facility license for a gaming facility on the Tsalote Allotment. *See* Compl. Ex. 1 (Doc. No. 1-1). Plaintiffs allege "on information and belief" that the Chairman has not responded to this request. Compl. ¶ 47. The FSA Defendants argued at the hearing that FSAT "has done everything they were supposed to

---

[4] Although the parties also discuss Class II gaming, their papers suggest that the planned Casino will provide Class III gaming activities, which include "slot machines of any kind." 25 U.S.C. § 2703(7)(B)(ii), (8).

3

do" with regard to the NIGC, but the record before the Court does not include any express correspondence or opinion from BIA or NIGC regarding FSAT's plan to open the facility.

In February of 2022, FSAT announced on social media that it was constructing the Casino. *Id.* ¶ 43. On April 27, 2022, the Kiowa Comanche Apache Intertribal Land Use Committee ("KCA Committee") sent a letter to the NIGC objecting to the Casino and requesting agency action. The KCA Committee supplemented that letter on April 28, 2022. *Id.* ¶ 49. The NIGC acknowledged receipt of the letter but has not acted to prevent the opening of the Casino. *Id.* ¶ 50.

The FSA Defendants intend to operate 50 to 75 gaming machines at the approximately 3000-square-foot Warm Springs Casino (the "Casino"). The Casino has been constructed, although there is finish work left to be completed. Although Plaintiffs' Motion asserted that the Casino is set to open on June 1, 2022, the FSA Defendants represented at the hearing that the Casino is now planning a "soft opening" on June 10, 2022, with a full opening on June 15, 2022. The FSA Defendants have spent over $2 million and have hired employees and entered into contracts with multiple entities—gaming vendors, food and beverage services, and others—with the intention of opening the Casino on this timeline.

### III. Standard of Review

Plaintiffs' Motion for Temporary Restraining Order (or "TRO") asks the Court to enjoin the FSA Defendants from causing the Casino to open to the public or to engage in any gambling, gaming, or wagering on the Tsalote Allotment, pending consideration of Plaintiffs' request for entry of a preliminary injunction. *See* Pls.' TRO Br. at 15-31.

4

As explained by the Tenth Circuit,

> Ordinarily, a movant seeking a preliminary injunction must establish (1) a substantial likelihood of success on the merits; (2) irreparable injury to the movant if the injunction is denied; (3) the threatened injury to the movant outweighs the injury to the party opposing the preliminary injunction; and (4) the injunction would not be adverse to the public interest.

*Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 269 F.3d 1149, 1154 (10th Cir. 2001); *see also* Fed. R. Civ. P. 65(b), (d). A showing on "[e]ach of these elements is a prerequisite for obtaining" injunctive relief. *Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016). "[A]ny modified test which relaxes one of the prongs for preliminary relief and thus deviates from the standard test is impermissible." *Id.* at 1282. These requirements also apply to a request for a temporary restraining order. *See Wiechmann v. Ritter*, 44 F. App'x 346, 347 (10th Cir. 2002); *United States v. Terry*, No. CIV-19-250-SLP, 2019 WL 7753271, at *1 (W.D. Okla. Mar. 26, 2019).

An application for a TRO or other injunctive relief "is addressed to the sound judicial discretion of the district court." *Goodpaster v. Okla. Gas & Elec. Co.*, 291 F.2d 276, 278 (10th Cir. 1961). "Because a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal." *Dominion Video Satellite*, 269 F.3d at 1154.

IV. *Discussion*

    A. *Substantial Likelihood of Success on the Merits*

        1. *Plaintiffs' APA Claim*

Plaintiffs argue that, pursuant to the 1867 Treaties of Medicine Lodge and 25 C.F.R. § 151.8, the consent of the Kiowa Tribe, Comanche Nation, and Apache Tribe was required

for the Tsalote Allotment to be acquired in trust for FSAT. Plaintiffs contend that because these three tribes were not notified and did not provide consent, the Federal Defendants "lacked authority to approve" the transaction, and their actions should be set aside as arbitrary and capricious, an abuse of discretion, and contrary to law. Compl. ¶¶ 58-65; *see* 5 U.S.C. § 706(2); *see also* 25 C.F.R. § 151.12(c) (prescribing that a decision by DOI to approve or deny a request to have land acquired in trust "is a final agency action under 5 U.S.C. 704 upon issuance"); *see, e.g.*, *Citizen Band Potowatomi Indian Tribe of Okla. v. Collier*, 142 F.3d 1325, 1327, 1334 (10th Cir. 1998) (holding that BIA's approval of trust placement conducted without tribe's consent was violative of § 151.8 and "contrary to law" under the APA).

The Federal Defendants have supplied documents reflecting that all three tribes were notified in June 2001 of the United States' application to acquire the Tsalote Allotment in trust for FSAT. *See* Fed. Defs.' Exs. 3, 4, 5 (Doc. Nos. 18-3, 18-4, 18-5). The deed was executed on June 26, 2001, and is stamped as received and recorded with the BIA on July 24, 2001. *See* Fed. Defs.' Ex. 6, at 1-2. Further, on July 18, 2002, the BIA sent the Chairman of the Kiowa Tribe a written response to that official's inquiry, stating that the Tsalote Allotment "is now held by the United States of America for and on behalf of the Fort Sill Apache Tribe of Oklahoma and is now considered a Tribal Tract under their jurisdiction." Fed. Defs.' Ex. 7 (Doc. No. 18-7).

The Federal Defendants therefore argue that Plaintiffs' "base claim"—i.e., that the Tsalote Allotment was invalidly transferred in 2001—is time barred and so Plaintiffs cannot show a substantial likelihood of success on the merits on the APA Claim.

6

In a previous case in this Court, the Comanche Nation similarly challenged BIA's approval of an acquisition of a portion of a Comanche Nation allotment by the United States to be held in trust for FSAT. *See Comanche Nation*, 393 F. Supp. 2d at 1201-03. Judge Friot addressed the statute of limitations applicable to such an APA claim:

> Section 2401(a) provides in pertinent part that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a). This six-year limitations period applies to claims arising under the APA, *see, Wind River Mining Corp. v. United States*, 946 F.2d 710, 712-13 (9th Cir.1991), and it also applies to equitable as well as legal claims, *see, Christensen v. United States*, 755 F.2d 705, 708 (9th Cir. 1985), *cert. denied*, 476 U.S. 1181 (1986). In addition, Indian tribes are not exempt from § 2401(a)'s application. *Sisseton-Wahpeton Sioux Tribe v. United States*, 895 F.2d 588, 592 (9th Cir.), *cert. denied*, 498 U.S. 824 (1990).
>
> Courts have concluded that a cause of action "first accrues" for purposes of § 2401(a) "'when all the events have occurred which fix the alleged liability of the United States and entitle the claimant to institute an action.'" *United States v. Sams*, 521 F.2d 421, 429 (3d Cir.1975) (quoting *Japanese War Notes Claimants Ass'n of Phil., Inc. v. United States*, 178 Ct. Cl. 630, 373 F.2d 356, 358 (1967), *cert. denied*, 389 U.S. 971 (1967)).

*Id.* at 1208 (citations omitted). Judge Friot found that "the Comanche Nation, through the exercise of reasonable diligence, could have learned of the facts which give rise to its claims in regard to [BIA's] decision" on the date that "equitable title was transferred to the FSA Tribe and the transfer was recorded in the BIA land titles and records office." *Id.* at 1201, 1208-09.

Here, the record reflects that Plaintiffs learned of the transfer of the Tsalote Allotment on or before the date the transfer was recorded in July of 2001, or by July of 2002 at the latest. As a result, Plaintiffs' APA claim challenging the transfer of the Tsalote Allotment appears to be time-barred.

7

Plaintiffs suggested at the hearing, however, that the statute of limitations would not bar them from seeking relief due to the violation of a treaty under federal common law. But Plaintiffs' claim is not premised upon such a treaty violation. As pleaded, the alleged noncompliance with the treaty is merely one underlying reason that the Federal Defendants' approval of the transfer of the Tsalote Allotment to FSAT was "arbitrary, capricious, an abuse of discretion, and contrary to law in violation of the [APA]." Compl. ¶ 63; *see also id.* ¶ 62 ("[T]he Federal Defendants lacked authority to approve the acquisition in trust of the Tsalote Allotment by [FSAT] without providing notice to, or obtaining the consent of, the Kiowa Tribe, Comanche Nation, or Apache Tribe.").

Plaintiffs' request for judicial review under the APA of the Government's 2001 approval of that transfer is subject to the six-year statute of limitations in § 2401(a) and therefore is time barred. *See* 28 U.S.C. § 2401(a); *Comanche Nation*, 393 F. Supp. 2d at 1207-08. Plaintiffs cannot show a substantial likelihood of success on the merits of their APA Claim.

### 2. Plaintiffs' Claims Against the FSA Defendants

#### a. The FSA Defendants' Assertion of Sovereign Immunity

The FSA Defendants assert that because FSAT is a federally recognized Indian tribe, they are immune from suit. *See* FSA Defs.' Resp. at 13-14. "Indian tribes are 'domestic dependent nations' that exercise inherent sovereign authority over their members and territories. Suits against Indian tribes are thus barred by sovereign immunity absent a clear waiver by the tribe or congressional abrogation." *Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 509 (1991) (quoting *Cherokee Nation v.*

8

*Georgia*, 30 U.S. (5 Pet.) 1, 17 (1831)).  "That immunity also extends to 'sub-entities or enterprises of a tribe.'"  *Harris v. Muscogee (Creek) Nation*, No. 11-CV-654, 2012 WL 2279340, at *2 (N.D. Okla. June 18, 2012) (quoting *Native Am. Distrib. v. Seneca-Cayuga Tobacco Co.*, 491 F. Supp. 2d 1056, 1064 (N.D. Okla. 2007), *aff'd*, 546 F.3d 1288 (10th Cir. 2008)).

Rather than suing FSAT directly, Plaintiffs bring suit against FSAT officials and FSAGC officials, each in both an official and an individual capacity.  The Tenth Circuit has made clear "that a plaintiff generally may not avoid the operation of tribal immunity by suing tribal officials."  *Native Am. Distrib.*, 546 F.3d at 1296-97.

> "[T]he interest in preserving the inherent right of self-government in Indian tribes is equally strong when suit is brought against individual officers of the tribal organization as when brought against the tribe itself."  *Nero v. Cherokee Nation of Okla.*, 892 F.2d 1457, 1462 (10th Cir. 1989) (citation and quotation marks omitted).  Accordingly, a tribe's immunity generally immunizes tribal officials from claims made against them in their official capacities.  The general bar against official-capacity claims, however, does not mean that tribal officials are immunized from individual-capacity suits *arising out of* actions they took in their official capacities, as the district court held.  Rather, it means that tribal officials are immunized from suits brought against them *because of* their official capacities—that is, because the powers they possess in those capacities enable them to grant the plaintiffs relief on behalf of the tribe.
>
> We again find guidance in cases discussing federal and state sovereign immunity.  Where a suit is brought against the agent or official of a sovereign, to determine whether sovereign immunity bars the suit, we ask whether the sovereign "is the real, substantial party in interest."  *Frazier v. Simmons*, 254 F.3d 1247, 1253 (10th Cir. 2001) (quotation marks and citation omitted).  This "turns on the relief sought by the plaintiffs."  *Id.* (quotation marks and citation omitted).  "[T]he general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter."  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) (quotation marks and citation omitted).

9

*Id.* at 1296-97 (second alteration in original) (footnote and citations omitted).

Plaintiffs' Complaint plausibly asserts claims against the FSA Defendants in their official capacities—i.e., it seeks a "decree" that "would operate against" "the sovereign" (FSAT), through a suit that would enable the FSAT officials "to grant [Plaintiffs] relief on behalf of [FSAT]" "because [of] the powers they possess" in their official capacities. *Id.*; *see* Compl. ¶¶ 66-105. "Defendants in an official-capacity action may assert sovereign immunity." *Lewis v. Clarke*, 137 S. Ct. 1285, 1291 (2017). There has been no showing of a waiver or congressional abrogation of FSAT's tribal sovereignty as to Plaintiffs' IGRA and RICO Claims.[5] Accordingly, the FSA Defendants' assertion of tribal sovereign immunity is well taken.

Pursuant to *Ex parte Young*, however, an exception to sovereign immunity applies to suits against tribal officials that seek to enjoin an alleged ongoing violation of federal law. *Crowe & Dunlevy, P.C., v. Stidham*, 640 F.3d 1140, 1154-55 (10th Cir. 2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)); *see also* Compl. at 2. "The *Ex parte Young* exception proceeds on the fiction that an action against a state official seeking only prospective injunctive relief is not an action against the state and, as a result, is not subject to the doctrine of sovereign immunity." *Stidham*, 640 F.3d at 1154.

---

[5] The Supreme Court has recognized that IGRA "abrogates tribal sovereign immunity" as to actions "to enjoin a class III gaming activity located on Indian lands and conducted in violation of any Tribal-State compact." *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 791 (2014); 25 U.S.C. § 2710(d)(7)(A)(ii). As discussed further below, however, Plaintiffs fail to adequately argue or show a likelihood of success on any such claim.

"To determine whether the *Ex parte Young* exception applies, [courts] need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1167 (10th Cir. 2012) (internal quotation marks omitted). The first requirement is met if the complaint presents "a non-frivolous, substantial claim for relief against the state officers that does not merely allege a violation of federal law solely for the purpose of obtaining jurisdiction." *Id.* at 1166-67 (alteration and internal quotation marks omitted). The second requirement is met if the request for relief seeks to "prevent prospective violations of federal law" rather than "to address alleged past harms." *Buchheit v. Green*, 705 F.3d 1157, 1159 (10th Cir. 2012).

Plaintiffs' Complaint presents a substantial claim for relief and seeks to prevent the FSA Defendants from violating federal law through opening and operating the Casino. *See* Compl. ¶¶ 20-57, 66-105. On the current record, it has been sufficiently shown that the *Ex parte Young* exception applies to allow the claims for prospective injunctive relief against the FSA Defendants, at least those raised against them in their official capacities, to proceed.[6]

---

[6] In light of this preliminary determination, the Court need not consider at this juncture the viability of Plaintiffs' individual-capacity claims against the FSA Defendants, but notes that it must examine what remedy is "truly" sought, rather than "simply rely[ing] on the characterization of the parties in the complaint," in assessing whether sovereign immunity bars the suit. *Lewis*, 137 S. Ct. at 1290.

### b. *Plaintiffs' IGRA Claim*

Plaintiffs contend that the FSA Defendants' opening of the Casino will violate IGRA in several ways. *See* Compl. ¶¶ 66-76; Pls.' TRO Br. at 16-22.

IGRA prescribes that a tribe may engage in Class III gaming "on Indian lands of the Indian tribe" only if such activities are "authorized by an ordinance or resolution that" is adopted by a tribe "having jurisdiction over such lands." 25 U.S.C. § 2710(d)(1)(A)(i), (d)(2)(A); *see also id.* §§ 2710(b)(2), (d)(1)(A)(ii). Plaintiffs first contend that because the June 2001 transfer to FSAT was invalid, FSAT does not own and therefore cannot "hav[e] jurisdiction" over the Tsalote Allotment where the Casino is planned to operate. *Id.* § 2710(d)(1)(A)(i); *see* Pls.' TRO Br. at 17-19. Alternatively, Plaintiffs assert that even if the 2001 transfer of equitable title to the Tsalote Allotment was valid, FSAT lacks jurisdiction over that parcel "because within the KCA Reservation jurisdiction over land remains with the tribe in which the original allottee"—i.e., George Tsalote, a Kiowa Tribe member—"was enrolled, notwithstanding any later transfers." Pls.' TRO Br. at 19-21.

Second, Plaintiffs argue that gaming on the Tsalote Allotment would violate IGRA because the land was placed in trust for FSAT in 2001, and 25 U.S.C. § 2719(a) prescribes that—subject to some inapplicable exceptions—"gaming . . . shall not be conducted on lands acquired by the Secretary in trust for the benefit of an Indian tribe after October 17, 1988." 25 U.S.C. § 2719(a); *see* Pls.' TRO Br. at 21-22.

At the hearing, the Federal Defendants argued Plaintiffs' IGRA claim was improperly pled, as any claim of an IGRA violation must be raised as a request for judicial review pursuant to the APA. Relatedly, the FSA Defendants argue that IGRA does not

give Plaintiffs the right or authority to sue them based upon violation of that statute, emphasizing that "Congress in passing the IGRA set out the NIGC as the agency task[ed] to regulate gaming" pursuant to that statutory scheme. FSA Defs.' Resp. at 12.

The Court finds that these objections are well taken. It is well established in the Tenth Circuit that "IGRA provides no private right of action against [a] Tribe, [a] State, the federal government or any official or agency thereof." *Hartman v. Kickapoo Tribe Gaming Comm'n*, 319 F.3d 1230, 1232 (10th Cir. 2003).

> As the Supreme Court has observed, "the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979). Although Congress did provide that certain decisions by the NIGC made under various provisions of IGRA are subject to federal court review under the Administrative Procedures Act, *see* 25 U.S.C. § 2714, the district court correctly pointed out that nowhere does IGRA expressly authorize private individuals to sue directly under the statute for failure of a tribe, a state, or the NIGC to comply with its provisions. Moreover, we note that Congress expressly provided various causes of action in favor of tribes, states, and the federal government for certain violations of IGRA. *See, e.g.*, 25 U.S.C. §§ 2710, 2711, 2714. The Supreme Court has held that "when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies." *Nat'l R.R. Passenger Corp. v. Nat'l Assoc. of R.R. Passengers*, 414 U.S. 453, 458 (1974). Accordingly, we hold that IGRA contains no implied private right of action in favor of an individual seeking to enforce compliance with the statute's provisions.

*Hartman*, 319 F.3d at 1232-33 (footnote and parallel citations omitted).

As pleaded and argued to the Court by Plaintiffs, the IGRA Claim is not an appeal taken against NIGC to challenge any gaming-related decision or opinion of that

commission.[7] It is, rather, a claim directed at FSA officials that attempts to bring a "private right of action" "to enforce compliance with the statute's provisions." *Id.* at 1233. Plaintiffs therefore have not presented a claim that is reviewable by this Court pursuant to 25 U.S.C. § 2714. *See id.*; *see also Unkeowannulack v. Table Mountain Casino*, No. CV-F-07-1341, 2007 WL 4210775, at *7 (E.D. Cal. Nov. 28, 2007).

Plaintiffs do allege in passing that FSAT's Class III gaming operations on the Tsalote Allotment "will violate [FSAT's] gaming compact with Oklahoma," "which recites that the tribe may conduct Class III gaming only on its own Indian lands." Pls.' TRO Br. at 21 (citing Compact § 5(L)); Compl. ¶ 72. While 25 U.S.C. § 2710(d)(7)(A) does provide a "cause[] of action in favor of tribes" to enjoin Class III gaming "located on Indian lands and conducted in violation of any Tribal-State compact," Plaintiffs' nominal argument, unsupported by any discussion of the statutory provision or citation to relevant authority, is insufficient to show a substantial likelihood of success on such a claim at this stage of proceedings. *Hartman*, 319 F.3d at 1232; 25 U.S.C. § 2710(d)(7)(A)(ii); *see Salt*

---

[7] As found above, Plaintiffs allege that the FSA Defendants submitted their gaming resolution to the Chairman of the NIGC for approval on September 18, 2020, as part of their expedited request for review of FSAT's notice of consideration of a gaming license for the Casino. *See* Compl. Ex. 1 ("Resolution FSABC-2020-04: Business Committee Resolution to Authorize Gaming at the Apache Wye"). No party has disputed Plaintiffs' allegation that the Chairman did not respond to the request for review within the 30-day period prescribed by 25 C.F.R. § 559.2(a)(1). Nor is there any indication that the Chairman has "approved" FSAT's gaming resolution pursuant to § 2710(d)(1)(A)(iii) or responded to the KCA Committee's written objections. *See* Compl. ¶¶ 49-50; *see also* 25 U.S.C. § 2710(e). Plaintiffs do not address these allegations in any detail, however, and their IGRA Claim as pleaded cannot be reasonably viewed as presenting any NIGC action (or withholding of action) on the request for expedited review, the gaming resolution, or the written objections to this Court as the basis for violation of that statute.

*Lake Trib. Publ'g Co. v. AT & T Corp.*, 320 F.3d 1081, 1100 (10th Cir. 2003) (explaining that to establish this factor the movant must "present a prima facie case showing a reasonable probability that it will ultimately be entitled to the relief sought" (alteration and internal quotation marks omitted)).

### 3. Plaintiffs' RICO Claim

Subsection 1962(c) of RICO prescribes that it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). "To successfully state a RICO claim, a plaintiff must allege four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002) (internal quotation marks omitted).

As noted by the Federal Defendants, Plaintiffs' theory of liability under RICO rests upon the premise that if FSAT, an "enterprise," runs the Casino, it will be knowingly operating "an illegal gambling business" and engaging in money laundering because the Casino is not authorized under IGRA (and therefore also not authorized under Oklahoma law). Compl. ¶¶ 77-105; *see also* Pls.' TRO Br. at 22 ("Because [FSAT] does not have any authority under IGRA to conduct gaming on the Tsalote Allotment, the FSA Defendants' plans to open a casino there constitute a conspiracy to violate RICO."). As outlined above, however, Plaintiffs have not shown a substantial likelihood of success on their claim that FSAT's acquisition of the Tsalote Allotment was invalid or on their claim

15

that operation of the Casino will violate IGRA. Plaintiffs therefore cannot show a substantial likelihood that they could successfully show that the FSA Defendants' intent to open and operate the Casino amounts to a RICO conspiracy and agreement to conduct FSAT's affairs "through a pattern of racketeering activity." Pls.' TRO Br. at 25; *see Salt Lake Trib. Publ'g Co.*, 320 F.3d at 1100.

### B. Summary

Because Plaintiffs cannot satisfy their burden to show that they are substantially likely to succeed on the merits of any of their legal claims, the Court need not reach the other three elements necessary for a TRO to issue. *See Nova Health Sys. v. Edmondson*, 460 F.3d 1295, 1299 (10th Cir. 2006); *Diné Citizens*, 839 F.3d at 1285.

This lawsuit presents difficult and intertwined questions of fact and law that have yet to be addressed in depth. Because Plaintiffs are unable to establish each and all of the relevant factors, however, they have not shown a clear and unequivocal right to extraordinary relief that necessitates preventing the Casino from opening as currently scheduled. The Court intends to expeditiously conduct proceedings on Plaintiffs' request for entry of a preliminary injunction and to avoid unnecessary hardship on all involved parties to the extent possible.

## CONCLUSION

For the reasons outlined herein, the Motion for a Temporary Restraining Order (Doc. No. 3) filed by Plaintiffs Kiowa Tribe and Comanche Nation is DENIED.

IT IS FURTHER ORDERED that proceedings regarding Plaintiffs' request for entry of a preliminary injunction shall be scheduled by separate order. The parties are

directed to submit a proposed schedule for consideration of that request no later than Wednesday, June 8, 2022.

    IT IS SO ORDERED this 3rd day of June, 2022.

                                                   *[signature]*
                                                 CHARLES B. GOODWIN
                                                 United States District Judge