# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **COMANCHE NATION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-22-425-G** |
| | ) | |
| **UNITED STATES DEPARTMENT** | ) | |
| **OF THE INTERIOR et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>ORDER</u>

Now before the Court are the Motion to Dismiss (Doc. No. 59) and Supplemental Motion to Dismiss (Doc. No. 123) filed by the FSA Defendants.[1] Plaintiff Comanche Nation has responded (Doc. Nos. 80, 126) and the FSA Defendants have replied (Doc. Nos. 91, 129).

### I.    Background

Plaintiffs Comanche Nation and Kiowa Tribe filed this action on May 24, 2022, raising three claims "to prevent an illegal casino from conducting unlawful gaming within Plaintiffs' reservation" and seeking entry of a temporary restraining order.  Compl. (Doc.

---

[1] The FSA Defendants are each sued in both their individual and official capacities and are identified as: Lori Gooday Ware, Fort Sill Apache Tribe ("FSAT") Chairwoman; Pamela Eagleshield, FSAT Vice-Chairman; James Dempsey, FSAT Secretary-Treasurer; FSAT Committee Members Jeanette Mann, Jennifer Heminokeky, and Dolly Loretta Buckner; Philip Koszarek, FSAGC ("Fort Sill Apache Gaming Commission") Chairman; Naomi Harford, FSAGC Vice-Chairman; and FSAGC Commissioners Michael Crump, Lauren Pinola, and Debbie Baker.

No. 1) ¶ 1.    On June 3, 2022, the Court denied Plaintiffs' request for a temporary restraining order.    *See* Order of June 3, 2022 (Doc. No. 31).

Plaintiffs filed an Amended Complaint (Doc. No. 51) and a motion for preliminary injunctive relief against the FSA Defendants (Doc. No. 52).    Plaintiff Kiowa Tribe then voluntarily dismissed its claims as to all defendants.    *See* Doc. Nos. 117, 118.    Following a telephonic status conference with the parties, the Court ordered the defendants to file any supplemental motions regarding the standing of remaining plaintiff Comanche Nation to continue to pursue this action.    *See* Order of Mar. 7, 2023 (Doc. No. 120).    The Federal Defendants[2] and the FSA Defendants then each timely filed a supplemental motion to dismiss.    *See* Doc. Nos. 123, 124.

## II.    *The Amended Complaint*

Plaintiff Comanche Nation is a federally recognized Indian tribe that operates six or more casinos in southwestern Oklahoma.    Am. Compl. ¶ 4.    In 1867, through the First Treaty of Medicine Lodge and the Second Treaty of Medicine Lodge, the Kiowa-Comanche-Apache ("KCA") Reservation was established in southwestern Oklahoma.    *Id.* ¶¶ 22-24.

In 1892, the United States, through "the Jerome Agreement," "acquired a substantial portion of the KCA Reservation and allotted individual tracts of land to the individual

---

[2]  The Federal Defendants are: the United States Department of the Interior ("DOI"); Bryan Newland, in his official capacity as Assistant Secretary—Indian Affairs; Darryl LaCounte, in his official capacity as Director of the Bureau of Indian Affairs ("BIA"); and Sharon Avery, in her official capacity as Acting Chair of the National Indian Gaming Commission ("NIGC").

members of the three tribes." *Comanche Nation v. United States*, 393 F. Supp. 2d 1196, 1200-01 (W.D. Okla. 2005); *see* Am. Compl. ¶¶ 25-26.   In 1901, the 160 acre-parcel of land within the KCA Reservation boundaries that is disputed in this matter was allotted to George Tsalote, a Kiowa Tribe member.   *See* Am. Compl. ¶ 28.   This tract (the "Tsalote Allotment") "w[as] held in trust by the United States for the beneficial use of the Indian owner." *Comanche Nation*, 393 F. Supp. 2d at 1201; *see* Am. Compl. ¶ 38.

On June 26, 2001, the Tsalote Allotment was deeded to the United States of America in trust for the Fort Sill Apache Tribe of Oklahoma (the "FSA Tribe").   Am. Compl. ¶ 46. "For years, the FSA Tribe held the Tsalote Allotment without attempting to exercise any form of jurisdiction on the land." *Id.* ¶ 47.

In April of 2005, the DOI approved the FSA Tribe's Class III Tribal Gaming Compact with the State of Oklahoma.   *See id.* ¶¶ 41-42.   In February of 2022, the FSA Tribe announced that it was constructing a casino, called the Warm Springs Casino, on the Tsalote Allotment.   *Id.* ¶ 47.   Comanche Nation, the Kiowa Tribe, and the Kiowa Comanche Apache Intertribal Land Use Committee began investigating how the FSA Tribe could be constructing a casino on the Tsalote Allotment.   *Id.* ¶ 48.   Comanche Nation learned that on September 18, 2020, the FSA Tribe had submitted a letter to the National Indian Gaming Commission ("NIGC") informing the NIGC of its intent to construct and open a new tribal gaming facility on the Tsalote Allotment and requesting a 60-day expedited review pursuant to 25 C.F.R. § 559.2(a)(1).   *Id.* ¶ 49.   Upon Comanche Nation's information and belief, the Chair of the NIGC has not responded to that request. *Id.* ¶ 50.

On April 27, 2022, the Kiowa Comanche Apache Intertribal Land Use Committee sent a letter to the NIGC, complaining of the Warm Springs Casino and requesting agency action, and supplemented that letter on April 28, 2022. *Id.* ¶ 51. The NIGC acknowledged receipt of the letter but has done nothing to stop or prevent the opening of the Warm Springs Casino. *Id.* ¶ 52. The Warm Springs Casino opened June 15, 2022, and offers both Class II and Class III gaming, as defined by the Indian Gaming Regulatory Act. *Id.* ¶ 53.

### III.    *Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)*

The FSA Defendants assert that Comanche Nation's allegations reflect that the Court lacks subject-matter jurisdiction to hear the claims of the Amended Complaint and, therefore, such claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1). Such a facial attack on the pleading's allegations regarding subject-matter jurisdiction "questions the [pleading's] sufficiency and requires the court to accept the allegations as true." *Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir. 2009); *see also E.F.W. v. St. Stephen's Indian High Sch.*, 264 F.3d 1297, 1302-03 (10th Cir. 2001). As the party asserting federal jurisdiction, Comanche Nation bears "the burden of alleging the facts essential to show jurisdiction." *U.S. ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 797 (10th Cir. 2002) (internal quotation marks omitted).

Citing Federal Rule of Civil Procedure 12(b)(6), the FSA Defendants also seek dismissal of the pleading for failure to state a claim upon which relief can be granted. In analyzing a motion to dismiss under Rule 12(b)(6), the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable

to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). "[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in the pleading, the court discusses the essential elements of each alleged cause of action to better "determine whether [the plaintiff] has set forth a plausible claim." *Id.* at 1192.

A complaint fails to state a claim on which relief may be granted when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (footnote and citation omitted). Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

IV.    *Count Three: Violation of the First Treaty of Medicine Lodge*

In Count Three of the Amended Complaint, Comanche Nation alleges that the FSA Defendants are liable for violation of the First Treaty of Medicine Lodge ("First Treaty"), 15 Stat. 581 (1867); *see Oneida Cnty. v. Oneida Indian Nation of N.Y.*, 470 U.S. 226, 234-36 (1985) (discussing tribal members' use of "a common-law action to vindicate their aboriginal rights"). Comanche Nation alleges that the First Treaty "reserved to the Kiowa Tribe and Comanche Nation the KCA Reservation, and specifically provided that the reservation would be for their exclusive use and occupation unless these tribes consented

to another tribe sharing the reservation." Am. Compl. ¶ 76. "With the sole exception of the Apache Tribe, the Kiowa Tribe and Comanche Nation have not consented to share or admit upon the KCA Reservation any other tribe." *Id.*; *see also id.* ¶ 83 ("Plaintiffs have never agreed to the FSA Tribe exercising jurisdiction within the KCA Reservation generally and have never agreed to the FSA Tribe exercising jurisdiction over the Tsalote Allotment specifically."). Therefore, Comanche Nation alleges that "[t]he FSA Tribe's assertion of jurisdiction over the Tsalote Allotment," including through operation of the Warm Springs Casino, is a violation of the First Treaty. *Id.* ¶ 84. Comanche Nation seeks entry of a declaratory judgment determining that the Kiowa Tribe, and not the FSA Tribe, has jurisdiction over the Tsalote Allotment, as well as "injunctive relief prohibiting the FSA Tribe from exercising any jurisdiction over the Tsalote Allotment, including . . . assessing sales taxes or offering any Class II or Class III gaming under IGRA." *Id.* ¶ 86.

The FSA Defendants argue that dismissal is required because, among other reasons, Comanche Nation has not shown that it has standing to pursue this claim under Article III of the U.S. Constitution. *See* FSA Defs.' Suppl. Mot. to Dismiss at 3-4, 8-9; FSA Defs.' Suppl. Reply at 9.

"Article III of the United States Constitution only extends federal judicial power to cases or controversies." *United States v. Meyers*, 200 F.3d 715, 718 (10th Cir. 2000). "Article III standing is a jurisdictional requirement for a plaintiff to plead and prove, and a lack of standing may be challenged by a motion under Rule 12(b)(1)." *Altstatt v. Bd. of Cnty. Comm'rs for Okla. Cnty.*, No. CIV-22-811-D, 2023 WL 6208550, at *2 (W.D. Okla. Sept. 22, 2023); *see also U.S. ex rel. Stone*, 282 F.3d at 797. When considering whether

Article III standing is established, a federal court "must assume plaintiff's claim has legal validity." *Awad v. Ziriax*, 754 F. Supp. 2d 1298, 1303 (W.D. Okla. 2010) (citing *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1088 (10th Cir. 2006)); *accord Diné Citizens Against Ruining Our Env't v. Bernhardt*, 923 F.3d 831, 841 (10th Cir. 2019) (noting that a party "need not prove the merits of [its] claim in order to establish standing"). At the pleading stage, a plaintiff's burden in establishing standing is "lightened considerably." *Petrella v. Brownback*, 697 F.3d 1285, 1292 (10th Cir. 2012).

To have standing to sue, a plaintiff must properly allege: (1) it "ha[s] suffered an injury in fact—an invasion of a legally protected interest"—"that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks omitted); *New England Health Care Emps. Pension Fund v. Woodruff*, 512 F.3d 1283, 1288 (10th Cir. 2008).

Comanche Nation alleges that the FSA Defendants are liable for violation of Article 2 of the First Treaty, which was signed in 1867. This provision set forth the geographic boundaries of the KCA Reservation and then prescribed that this land

> *shall be and the same is hereby set apart for the absolute and undisturbed use and occupation of the tribes herein named, and for such other friendly tribes or individual Indians as, from time to time, they may be willing (with the consent of the United States) to admit among them*; and the United States now solemnly agrees that no persons except those herein authorized so to do and except such officers, agents, and employees of the Government as may be authorized to enter upon Indian reservation in discharge of duties enjoined

by law, shall ever be permitted to pass over, settle upon, or reside in the
territory described in this article, or in such territory as may be added to this
reservation, for the use of said Indians.

First Treaty art. 2, 15 Stat. at 582 (emphasis added) (editor's mark omitted).

"On October 6, 1892, the United States negotiated an agreement with the Kiowa
Tribe, Comanche Nation, and Apache Tribe for the allotment of lands of the KCA
Reservation to individual members of the three tribes. This was known as the Jerome
Agreement." *Comanche Nation*, 393 F. Supp. 2d at 1200. "Pursuant to the Jerome
Agreement, the United States acquired a substantial portion of the KCA Reservation and
allotted individual tracts of land to the individual members of the three tribes." *Id.* at
1200-01.

In 1900, Congress ratified the Jerome Agreement, proclaiming:

Subject to the allotment of land, in severalty to the individual members of
the Comanche, Kiowa, and Apache tribes of Indians in the Indian Territory,
as hereinafter provided for, and subject to the setting apart as grazing lands
for said Indians, four hundred eighty thousand acres of land as hereinafter
provided for, and subject to the conditions hereinafter imposed, and for the
considerations hereinafter mentioned, the said Comanche, Kiowa, and
Apache Indians hereby cede, convey, transfer, relinquish, and surrender,
forever and absolutely, without any reservation whatever, express or implied,
all their claim, title, and interest, of every kind and character, in and to the
lands embraced in the [KCA Reservation].

Act of June 6, 1900 ("1900 Act"), art. I, ch. 813, 31 Stat. 676, 676-77 (1900).

The FSA Defendants argue that, because the KCA Reservation was disestablished
pursuant to the 1900 Act, Comanche Nation fails to allege an injury in fact. *See* FSA
Defs.' Suppl. Mot. to Dismiss at 3-4, 7-8 (citing *Martinez v. State*, 502 P.2d 1115 (Okla.
Crim. App. 2021)). The FSA Defendants assert that, as a result of the 1900 Act, "there is

no KCA Reservation reserved for the exclusive use and occupation of the Comanche Nation" and thus no violation of any associated treaty right. *Id.* at 8.

Comanche Nation does not dispute that such an abrogation of its treaty rights would deprive it of standing but argues that Comanche Nation may still enforce its rights under the First Treaty, as the 1900 Act was enacted to open the KCA Reservation "for non-Indian settlement on fee lands," not for "from allowing another tribe to obtain jurisdiction over tribal trust lands on that reservation." Pl.'s Suppl. Resp. at 25.

The relevant authorities persuasively demonstrate, however, that the rights Comanche Nation attempts to now enforce are inconsistent with the effect of the 1900 Act and so must have been extinguished by that legislation. It is now well established that in the 1900 Act Congress "intended to dissolve the tribal government" and "disestablish the organized reservation." *Tooisgah v. United States*, 186 F.2d 93, 97-98 (10th Cir. 1950); *accord Pittsburg & Midway Coal Mining Co. v. Yazzie*, 909 F.2d 1387, 1421 (10th Cir. 1990); *In re Yates*, 349 P.2d 45, 47 (Okla. Crim. App. 1960). It is further established that Congress "did so" disestablish the KCA Reservation via the 1900 Act. *Martinez*, 502 P.3d at 1120. Whatever additional purposes of Congress may have been possible, Comanche Nation fails to show how the tribes' First Treaty right to "absolute and undisturbed use and occupation" of the land within the former reservation can reasonably still be intact after those tribes agreed to "cede, convey, transfer, relinquish, and surrender, *forever and absolutely*, *without any reservation whatever*, express or implied, all their claim, title, and interest, of every kind and character, in and to" that same land. First Treaty art. 2; 1900 Act art. I (emphasis added); *cf. Tooisgah*, 186 F.2d at 99 (noting that with the 1900 Act

"the reservation was dissolved and tribal government broken up"); *Martinez*, 502 P.3d at 1119 (explaining that the 1900 Act confirmed "complete . . . surrender of all tribal claims to their reservation lands"). *See generally McGirt v. Oklahoma*, 591 U.S. 894, 904 (2020) (noting that Congress commonly expresses its intent to disestablish a reservation through "language evidencing the present and total surrender of all tribal interests" (internal quotation marks omitted)).

Comanche Nation alternatively asserts that the 1900 Act does not apply at all to the Tsalote Allotment. *See* Pl.'s Suppl. Resp. at 26-27. Specifically, Comanche Nation points to the text of the 1900 Act prescribing that the surrender of the tribes' interest in the land was made "[s]ubject to the allotment of land, in severalty to the individual members of the Comanche, Kiowa, and Apache tribes of Indians in the Indian Territory." 1900 Act art. I. Because the Tsalote Allotment is one of the referenced allotments in severalty, argues Comanche Nation, the 1900 Act "cannot have possibly extinguished the Comanche Nation's treaty right to consent to another tribe acquiring jurisdiction or ownership over the Tsalote Allotment." Pl.'s Suppl. Resp. at 26.

Beyond quoting the "[s]ubject to" language, Comanche Nation offers no authority for the conclusion that the Tsalote Allotment is "outside the scope" of the 1900 Act, and the Court finds that Comanche Nation's position does not align with a reasonable reading of the 1900 Act or relevant case authority. As noted above, the Tsalote Allotment was allotted to a Kiowa tribal member. *See* Am. Compl. ¶ 28. Article II of the 1900 Act prescribed that such an allotment was part of, and included in, the lands over which the tribes were relinquishing their interest:

> Out of the lands ceded, conveyed, transferred, relinquished, and surrendered by Article I hereof, and in part consideration for the cession thereof, it is agreed by the United States that each member of said Comanche, Kiowa, and Apache tribes of Indians over the age of eighteen (18) years shall have the right to select for himself or herself one hundred and sixty (160) acres of land to be held and owned in severalty, to conform to the legal surveys in boundary[.]

1900 Act art. II.

The quoted text makes clear that allotments such as the Tsalote Allotment were selected "*out of* the lands ceded"—i.e., the lands to which the tribes surrendered any interest in Article I—rather than lands separate from the ceded lands. *Id.* (emphasis added); *accord Tooisgah*, 186 F.2d at 97 (explaining that "[t]he allotment of lands in severalty within the limits of [an] established reservation" would not, standing alone, disestablish the reservation or "exclude the allotments from [the reservation of which they were a part]"). And when the tribal government "dissolve[d]" pursuant to the 1900 Act, the KCA Reservation was likewise "dissolved." *Id.* at 97, 99. Thus, the allotments were "not considered to be retained reservation lands," as Comanche Nation suggests. *Yazzie*, 909 F.2d at 1421; *see also United States v. Burnett*, 777 F.2d 593, 596 (10th Cir. 1985).

Comanche Nation therefore fails to show that it retains any right to seek redress for violation of the First Treaty as to the Tsalote Allotment. Because Comanche Nation has not met its burden to establish standing on Count Three, dismissal is required pursuant to Federal Rule of Civil Procedure 12(b)(1).

V.    *Count Four: Violation of the Indian Gaming Regulatory Act*

In Count Four, Comanche Nation brings a claim for violation of the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701 et seq. Pursuant to IGRA, class III gaming

is lawful on Indian lands only if the gaming is: (i) authorized by an ordinance or resolution that meets certain requirements; (ii) located in a State that permits such gaming; and (iii) "conducted in conformance with a Tribal-State compact entered into by the Indian tribe and the State under [§ 2710(d)(3)] that is in effect." *Id.* § 2710(d)(1).

Comanche Nation invokes 25 U.S.C. § 2710(d)(7)(A)(ii), which provides:

(7)(A) The United States district courts shall have jurisdiction over—

  . . .

     (ii) any cause of action initiated by a State or Indian tribe to enjoin a class III gaming activity located on Indian lands and conducted in violation of any Tribal-State compact entered into under [§ 2710(d)(3)] that is in effect[.]

*Id.* § 2710(d)(7)(A)(ii); *see* Am. Compl. ¶¶ 88-89.

According to Comanche Nation, the operation of the Warm Springs Casino should be enjoined because the gaming is being conducted unlawfully and in violation of a tribe-state compact that is itself unlawful. *See* Am. Compl. ¶¶ 94, 99; *id.* Ex. 7, FSAT-Okla. Compact (Doc. No. 51-1). First, the gaming is violating IGRA's prescription that class III gaming "shall be lawful on Indian lands only if . . . authorized by an ordinance or resolution that . . . is adopted by the governing body of the Indian tribe having jurisdiction over such lands." 25 U.S.C. § 2710(d)(1)(A)(i). Because the FSA Tribe lacks jurisdiction over the relevant lands, that tribe's adoption of the ordinance or resolution did not conform to this statutory requirement. *See* Am. Compl. ¶¶ 1, 86, 92, 98.[3] Second,

_____

[3] Comanche Nation also suggests that the casino's class II gaming is violative of a separate provision of IGRA, *see* Am. Compl. ¶ 92 (citing 25 U.S.C. § 2710(b)).

operation of the Warm Springs Casino is violative of 25 U.S.C. § 2719(a), which generally prohibits gaming on lands acquired in trust after October 17, 1988.   *See id.* ¶¶ 93, 98.

Comanche Nation alleges that these illegalities result in the relevant gaming being "conducted in violation of" the compact entered into by the FSA Tribe and the State of Oklahoma (the "2005 Compact").   25 U.S.C. § 2710(d)(7)(A)(ii).   More specifically, because the Compact incorporates IGRA's requirement that the compacting tribe must have jurisdiction over the lands where the gaming is being conducted, by expressly stating that the FSA Tribe may establish and operate gaming facilities only on "'*its* Indian lands as defined by IGRA,'" the FSA Tribe's gaming is violating that requirement.   Am. Compl. ¶ 97 (emphasis added) (quoting 2005 Compact pt. 5(L)); *see also* 25 U.S.C. § 2710(d)(3)(A) (prescribing that an Indian tribe "having jurisdiction" over the gaming lands shall request the State to enter into a compact).   Comanche Nation further alleges that the gaming on the Tsalote Allotment should be enjoined pursuant to § 2710(d)(7)(A)(ii) because "Oklahoma's offer of a compact to the FSA Tribe was expressly conditioned on the compact relating to 'Indian lands . . . over which the tribe has jurisdiction . . . and [are] a part of the tribe's "Indian reservation" as defined in 25 C.F.R., Part 151.2 or ha[ve] been acquired pursuant to 25 C.F.R., Part 151.'"   Am. Compl. ¶ 96 (first omission in original) (quoting Okla. Stat. tit. 3A, § 280).   Because the FSA Tribe does not have jurisdiction over the allotment, the allotment is not part of the FSA Tribe's reservation, and the FSA Tribe's acquisition of the allotment was invalid under 25 C.F.R. § 151.7 (formerly § 151.8), it is alleged that the tribal gaming is being conducted in violation of the compact with the State of Oklahoma.   *See id.* ¶ 98.

### A. *Rule 12(b)(1): Constitutional Standing*

The FSA Defendants argue that Comanche Nation lacks Article III standing to bring both this claim and Count Five (addressed below) because Comanche Nation fails to sufficiently show an injury in fact caused by the allegedly unlawful operation of the Warm Springs Casino.   *See* FSA Defs.' Suppl. Mot. to Dismiss at 6-8.

To satisfy the injury-in-fact requirement for Article III standing, a party must allege that the injury is "concrete and particularized and actual and imminent, not conjectural or hypothetical."   *N. Mill St., LLC v. City of Aspen*, 6 F.4th 1216, 1229 (10th Cir. 2021) (internal quotation marks omitted).   An injury is concrete where it is a "real," not abstract, harm to a legally protected interest and is particularized where it affects a party "in a personal and individual way."   *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (internal quotation marks omitted).   A real injury can be tangible, such as a physical or monetary harm, or it can be intangible, such as a reputational harm.   *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021).

At this pleading stage, "general factual allegations of injury resulting from the [defendants'] conduct may suffice," for the Court "presum[es] that general allegations embrace those specific facts that are necessary to support the claim."   *S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1152 (10th Cir. 2013) (internal quotation marks omitted). Comanche Nation pleads that the unlawful operation by the FSA Tribe of the Warm Springs Casino "is diverting revenue from [Comanche Nation's] casinos" and "reducing revenue available for government programs."   Am. Compl. ¶ 59.   "For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'"   *Czyzewski v. Jevic*

*Holding Corp.*, 580 U.S. 451, 464 (2017).   And these allegations "are firmly rooted in the basic laws of economics that [Comanche Nation] would get a little more . . . gaming business at its Oklahoma casinos if the [FSA Tribe's] Oklahoma casinos did not conduct . . . gaming."   *Cherokee Nation*, 643 F. Supp. 3d at 109 (internal quotation marks omitted). Further, the harm is not alleged to result merely from competition but from "illegal competition," which "is a cognizable injury-in-fact for standing purposes."   *Id.* at 108.

For these reasons, Comanche Nation has shown an injury in fact sufficient to demonstrate Article III standing as to Counts Four and Five.

### B.  Rule 12(b)(7): Failure to Join a Party

The FSA Defendants also seek dismissal on the basis that Comanche Nation has failed to join Fort Sill Apache Tribe and/or Apache Tribe and/or the Kiowa Comanche Apache Intertribal Land Use Committee ("KCAILUC") in this lawsuit, despite these entities being required parties under Federal Rule of Civil Procedure 19.   *See* FSA Defs.' Mot. to Dismiss at 25-30.

As an initial matter, such dismissal would rest upon Rule 12(b)(7) of the Federal Rules of Civil Procedure, but the FSA Defendants do not discuss that Rule or present its relevant standards to the Court.   The motion's disjointed argument—in which it is asserted both that the FSA Tribe is immune from suit and that it is not—fails to show that any of these entities' joinder is required to allow the Court to afford complete relief or that Rule 19(a) otherwise requires dismissal.   *See* Fed. R. Civ. P. 19(a)(1)(A)-(B).   It follows that the motion fails to show that any of these entities' inability to be joined requires dismissal under Rule 19(b).   *See id.* R. 19(b); *Citizen Band Potawatomi Indian Tribe of Okla. v.*

*Collier*, 17 F.3d 1292, 1293 (10th Cir. 1994) ("The proponent of a motion to dismiss under Rule 12(b)(7) has the burden of producing evidence showing the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence.").

Further, governing authority supports the proposition that the FSA Tribe is not a necessary and indispensable party here, where the FSA Defendants are sued in their official capacities as tribal officials of the FSA Tribe. *See, e.g.*, *Sac & Fox Nation of Mo. v. Norton*, 240 F.3d 1250, 1258-60 (10th Cir. 2001) (reversing district court's dismissal under Rule 19 where, although the tribe had an economic stake in the litigation, "[t]he absence of the [tribe] d[id] not prevent the plaintiffs from receiving their requested declaratory relief" and a named defendant's interests were "substantially similar, if not virtually identical, to those of the [tribe]"); *Kansas v. United States*, 249 F.3d 1213, 1225-27 (10th Cir. 2001) ("[M]ost importantly, the potential for prejudice to the Miami Tribe is largely nonexistent due to the presence in this suit of not only [federal defendants], but also the tribal officials and [the other party to the gaming contract]."). Similarly, on the current record, the Court does not find that either the Apache Tribe—which is not alleged to have jurisdiction over the allotment—or the KCAILUC—which is not an Indian tribe and does not appear central to Comanche Nation's claims—is a necessary and indispensable party.

## C. *Rule 12(b)(6): Failure to State a Claim*

The FSA Defendants seek dismissal of Count Four for failure to state a claim upon which relief can be granted. In essence, they argue that Comanche Nation has not pleaded a plausible claim for violation of IGRA because (i) the 2005 Compact's reference to

"Indian Lands" includes the Tsalote Allotment, (ii) the NIGC has discretion "to make Indian lands determinations" and oversee gaming, and (iii) the FSA Tribe went through the approval process set out by IGRA and overseen by NIGC to establish the Warm Springs Casino.  *See* FSA Defs.' Mot. to Dismiss at 19-20.  The FSA Defendants also dispute Comanche Nation's contention that the FSA Tribe's acquisition of the Tsalote Allotment and operation of the casino violated/are violating federal regulations, treaties, and statutes. *See id.*; FSA Defs.' Reply at 4-11.

Such briefing ignores material aspects of Comanche Nation's theory of liability and fails to recognize that the Court must accept the Amended Complaint's well-pleaded allegations as true and view them in Comanche Nation's favor.  *See Burnett*, 706 F.3d at 1235.  Rather than showing any lack of plausibility in Count Four, these arguments attempt to defeat the claim on its merits based upon the FSA Defendants' version of the facts and legal conclusions.  Having considered the pleading, the Court concludes that Comanche Nation has adequately stated a claim to enjoin the casino's class III gaming due to its being conducted in violation of the 2005 Compact, as summarized above.  *See* Am. Compl. ¶¶ 87-101; 25 U.S.C. § 2710(d)(7)(A)(ii).

## VI.    *Count Five: Violation of RICO*

Finally, Comanche Nation asserts that the FSA Defendants are violating the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968. RICO prescribes in relevant part that it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such

enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." *Id.* § 1962(c).

Comanche Nation's theory of liability under RICO rests upon the premise that because the FSA Tribe, an "enterprise," runs the Warm Springs Casino, it is knowingly operating an illegal gambling business under 18 U.S.C. § 1955 and engaging in money laundering under 18 U.S.C. § 1956 because the casino is not authorized under IGRA (and therefore also not authorized under Oklahoma law). *See* Am. Compl. ¶¶ 102-130. Comanche Nation seeks a declaration that the FSA Defendants have violated RICO by conspiring to open the casino and injunctive relief preventing the FSA Tribe's operation of the casino or any gaming on the Tsalote Allotment. *See id.* ¶ 131.

The FSA Defendants first assert that they are not "person[s]" subject to liability under RICO because "person" in the statutory scheme does not expressly include tribal officials or tribes. *See* FSA Defs.' Mot. to Dismiss at 23 (citing 18 U.S.C. §§ 1961(3), 1962). They relatedly argue that they are immune to RICO claims due to their status as sovereign officials. *See id.* Comanche Nation presents multiple persuasive decisions inconsistent with this position, however, and the Court will not dismiss the claim on this basis. *See* Pl.'s Resp. at 26-27 (citing *Wilhite v. Awe Kualawaache Care Ctr.*, No. CV-18-80, 2018 WL 3586539, at *2 (D. Mont. July 26, 2018); *Brice v. Haynes Invs., LLC*, 548 F. Supp. 3d 882, 900-01 (N.D. Cal. 2021)); *cf. Gingras v. Rosette*, No. 5:15-cv-101, 2016 WL 2932163, at *28 (D. Vt. May 18, 2016) (holding that tribes are suable persons under RICO and, while they enjoy immunity, they were liable to suit for injunctive relief), *aff'd sub nom. Gingras v. Think Fin., Inc.*, 922 F.3d 112 (2d Cir. 2019).

Next, the FSA Defendants seek dismissal on the RICO claim under Rule 12(b)(6), arguing that Comanche Nation's allegations reflect not a pattern of racketeering activity but, rather, that all the defendants acted within their rights and in accordance with applicable statutes and regulations in opening the Warm Springs Casino. *See* FSA Defs.' Mot. to Dismiss at 22 ("It is Plaintiffs' contention that the FSAT Defendants conspired amongst themselves, and apparently with the NIGC and the United States Department of the Interior, by following the statutes and regulations promulgated under IGRA, to open a casino on land held in trust for the benefit of the FSAT.").

"To successfully state a RICO claim, a plaintiff must allege four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002) (internal quotation marks omitted); *accord George v. Urb. Settlement Servs.*, 833 F.3d 1242, 1248 (10th Cir. 2016). The FSA Defendants do not specifically address these elements, and the Court concludes that each is adequately pleaded in the Amended Complaint. *See, e.g.*, Am. Compl. ¶¶ 103-104 (identifying either the FSA Tribe or a division thereof as an enterprise operating in an affecting interstate commerce), 111-126 (alleging the manner and means of the conspiracy to engage in money laundering and illegal gambling), 127 (representing that Comanche Nation has been injured in its business or property by the FSA Defendants conducting the affairs of the enterprise unlawfully). At this early pleading stage, Count Five has been sufficiently pleaded "on the assumption that all the allegations . . . are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.

VII.    *Comanche Nation's Motion for Preliminary Injunction*

Comanche Nation has filed a Motion for Preliminary Injunction Against the FSA Defendants (Doc. No. 52), as well as supporting papers (Doc. Nos. 53, 54, 55).   The FSA Defendants and the Federal Defendants have each responded (Doc. Nos. 60, 64), and Comanche Nation has replied (Doc. Nos. 66, 67, 68).   The Court incorporates by reference herein the factual findings made in its Order of June 3, 2022, following an evidentiary hearing on Plaintiffs' request for a temporary restraining order.   *See* Order of June 3, 2022, at 2-4.   As the parties have submitted extensive briefing as well as supporting exhibits, the Court declines to conduct a separate hearing on the Motion for Preliminary Injunction. *See* LCvR 78.1.

In its Motion, Comanche Nation seeks an order enjoining the FSA Defendants from causing (1) the FSA Tribe to exercise any jurisdiction over the Tsalote Allotment and (2) the Warm Springs Casino to conduct class III gaming.   *See* Pl.'s Mot. Prelim. Inj. at 1-2.

A.   *Relevant Standards*

As explained by the Tenth Circuit,

> Ordinarily, a movant seeking a preliminary injunction must establish (1) a substantial likelihood of success on the merits; (2) irreparable injury to the movant if the injunction is denied; (3) the threatened injury to the movant outweighs the injury to the party opposing the preliminary injunction; and (4) the injunction would not be adverse to the public interest.

*Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 269 F.3d 1149, 1154 (10th Cir. 2001); *see also* Fed. R. Civ. P. 65(a).   A showing on "[e]ach of these elements is a prerequisite for obtaining" injunctive relief.   *Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016).

An application for injunctive relief "is addressed to the sound judicial discretion of the district court." *Goodpaster v. Okla. Gas & Elec. Co.*, 291 F.2d 276, 278 (10th Cir. 1961); *accord Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). "Because a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal." *Dominion Video Satellite*, 269 F.3d at 1154.[4]

    *B. Discussion*

Comanche Nation has not met its burden to show a substantial likelihood of success on the merits. Critically, Comanche Nation's request is focused upon its argument that as to Count Three (violation of the First Treaty) it has "present[ed] a prima facie case showing a reasonable probability that it will ultimately be entitled to the relief sought." *Salt Lake Trib. Publ'g Co. v. AT & T Corp.*, 320 F.3d 1081, 1100 (10th Cir. 2003) (alteration and internal quotation marks omitted); *see* Pl.'s Br. Prelim. Inj. (Doc. No. 53) at 10-11, 15-24. But Count Three is herein being dismissed in its entirety, as discussed *supra*, and cannot supply the basis for entry of extraordinary relief.

Comanche Nation also cites Count Four (violation of IGRA), primarily relying upon its amended pleading allegations as support for shutting down the Warm Springs Casino during the pendency of this litigation. *See* Pl.'s Br. Prelim. Inj. at 15, 24-29. While Comanche Nation has stated a facially plausible claim in Count Four, as summarized above, this claim is based upon an apparently novel and certainly complicated theory of

---

[4] The parties dispute whether Comanche Nation is seeking relief that is "disfavored" and therefore must satisfy a "heightened standard." *Fish v. Kobach*, 840 F.3d 710, 723 (10th Cir. 2016). The Court need not decide because Comanche Nation fails to make an adequate showing under either standard.

liability that will require proof of multiple underlying acts of unlawful conduct, by the FSA Defendants and others, ranging over more than 20 years and as yet not found to be improper by any other court or agency.   *See* Am. Compl. ¶¶ 87-99 (alleging violations of: 25 U.S.C. §§ 2710(b), (d)(3)(A), (d)(7)(A)(ii), and 2719(a); 25 C.F.R. §§ 151.2 and 151.7; and the 2005 Compact).   Further, the FSA Defendants' alleged liability under the IGRA relies in part upon Comanche Nation's contention that "[t]he FSAT's assertion of jurisdiction on the Tsalote Allotment violates the First Treaty"—the cause of action for which has been dismissed as to all defendants.   Pl.'s Br. Prelim. Inj. at 26.   Accordingly, the fact Comanche Nation has sufficiently pleaded a claim for ultimate injunctive relief does not amount to a clear and unequivocal showing of entitlement to the "drastic relief" of an extraordinary interim remedy.   *Schrier*, 427 F.3d at 1258 (internal quotation marks omitted) (noting that a preliminary injunction is "to be provided with caution" and "only in cases where the necessity for it is clearly established" (internal quotation marks omitted)).   Neither the pleading allegations nor the supporting submissions fulfill Comanche Nation's burden to show it is substantially likely to prevail upon the merits of Count Four.

Because Comanche Nation cannot satisfy its burden to show that it is substantially likely to succeed on the merits, the Court need not reach the other three elements necessary for a preliminary injunction to issue.   *See Nova Health Sys. v. Edmondson*, 460 F.3d 1295, 1299 (10th Cir. 2006); *Diné Citizens*, 839 F.3d at 1285.

## CONCLUSION

For these reasons, the Motion to Dismiss (Doc. No. 59) and Supplemental Motion

to Dismiss (Doc. No. 123) are GRANTED IN PART and DENIED IN PART, as follows:

- Count Three of the Amended Complaint is dismissed without prejudice pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure; and

- Count Four and Count Five of the Amended Complaint remain pending.

IT IS FURTHER ORDERED that Comanche Nation's Motion for Preliminary Injunction (Doc. No. 52) is DENIED.

IT IS SO ORDERED this 30th day of September, 2024.

CHARLES B. GOODWIN
United States District Judge